CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
SAMUEL CROSS (Bar No. 304718)
(E-Mail: sam_cross@fd.org)
IBOH UMODU (Bar No. 367345)
(E-Mail: iboh_umodu@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ERIN PETRA ESCOBAR

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>ERIN PETRA ESCOBAR and NICK ELIAS GUTIERREZ,<br><br>    Defendants. | Case No. 2:25-cr-00656-AB<br><br>**DEFENDANT ESCOBAR'S REPLY TO THE GOVERNMENT'S RESPONSE TO HER FIRST MOTION IN LIMINE** |

1

Erin Petra Escobar, by and through her counsel of record Deputy Federal Public Defenders Samuel Cross and Iboh Imodu, hereby files her Reply to the Government's Response, ECF No. 51, to her First Motion in Limine, ECF No. 47.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  March 24, 2026          By  /s/ Samuel Cross

SAMUEL CROSS
IBOH UMODU
Deputy Federal Public Defenders
Attorneys for ERIN PETRA ESCOBAR

2

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The Indictment against Ms. Escobar alleged, inter alia, that she committed depredation of government property, in violation of 18 U.S.C. § 1361, by writing on metal barriers or boxes outside the Edward R. Roybal Federal Building and United States Courthouse (Roybal) on July 17, 2025.  ECF No. 28.  Based on concerns raised in discovery that Federal Protective Services (FPS) officers had previously seen Ms. Escobar defacing government property on numerous occasions, Ms. Escobar moved in limine to exclude such irrelevant and prejudicial other-acts evidence under Federal Rule of Evidence 404(b), citing Federal Rule of Evidence 404(b)(3) to show that the government had failed to comply with the Rule's notice requirements.  Def. Mot. Lim. 1, 3–9, ECF No. 47.  Ms. Escobar voiced a particular concern that the government would attempt to late-notice 404(b) evidence in its opposition, thereby seeking to circumvent the purpose and effect of 404(b)(3)'s notice requirements.  See id. at 7 n.2. The government's Response does just this, purporting to notice 404(b) evidence regarding Ms. Escobar's supposed "making [of] false and threatening statements to a local small business owner (victim)."  Gov't Resp. Mot. Lim. 3, ECF No. 51.

The government offers no justification for this late notice in its putative Response, whose purpose appears to be to evade the notice requirements and opportunity for briefing and orderly ruling provided for by Rule 404(b)(3). Furthermore, while the government at times seems to say such evidence would (through a tortured chain of logic) be relevant only to prove Ms. Escobar's identity, were that relevant, it also surreptitiously asserts that it will be relevant to rebut a claim of self-defense.  See Gov't Resp. Mot. Lim. 4.  The Court should reject the government's attempted end-run around the Rule and the Court's scheduling orders, and should both a) grant Ms. Escobar's Motion in Limine and b) additionally rule, pursuant to Rule 104, that the government's newly proffered 404(b) evidence is inadmissible for any purpose.

3

## II.  ARGUMENT

**A.    The government's notice is fatally untimely, and appears designed to circumvent the Court's scheduling orders and Federal rules.**

In a criminal case, the prosecutor must:

> (A) provide reasonable notice of any [other acts] evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it;
>
> (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and
>
> (C) do so in writing before trial — or in any form during trial if the court, for good cause, excuses lack of pretrial notice.

Fed. R. Evid. 404(b)(3).  Pursuant to this Court's scheduling order, all motions in limine were to be filed by March 11, 2026.  Order for Pretrial Deadlines Schedule 1, ECF No. 41.

Here, 11 days before trial, in a Response that was itself filed two days out of time based on the Court's scheduling order, the government purports to notice previously undisclosed 404(b) evidence wholly unrelated to the topic of Ms. Escobar's initial motion.  The government says it has "[r]ecently" learned—it does not say how, or how recently—that "defendant Escobar has been making false and threatening statements to a local small business owner (victim)."  Gov't Resp. Mot. Lim. 3.  The government's Response then goes on to narrate a string of unattributed but evidently hearsay statements to the effect that Ms. Escobar, sometime in the last year, had a disagreement with a street vendor in a Silverlake, CA, farmer's market, and went on to post about it on Instagram in a way the government deems, without stating its basis for thinking so, to be "inflammatory, reckless, and/or false."  Id.  It is said that Ms. Escobar then "demand[ed] on Instagram that the victim pay money to her charity, and later that he pay $5,000 to a charity that supported certain immigration policies."  Id. at 4.  The

government has produced this afternoon a jumble of images apparently depicting multiple social media accounts and posts, some of which (or perhaps all of which) the government believes are associated with Ms. Escobar.  Cross Decl. ¶ 5.

The government has not explained, by sworn declaration or otherwise, when it learned of these facts, whether it exercised reasonable diligence in the time the case has been pending (since July 17, 2025) to discover them, and, to the extent it did not, what justifies late admission of this material under Rule 404(b)(3), which on a very generous interpretation has only been partly produced to the defense.  This last point matters—11 days before trial, Ms. Escobar has been told someone traduced her, and counsel in her federal matter, who have no involvement in any potential charges in state court, have been informed only now, when the time, to say nothing of the free resources, to investigate and counter these allegations has dropped essentially to zero, due to impending trial and the need to prepare for it.  Ms. Escobar and her counsel are out of time, and attorney- and investigator-hours cannot now be reallocated to investigating and rebutting the government's tale about a squabble at a Silverlake farmer's market, let alone the government's more dire suggestions that whatever has or hasn't happened amounts to "attempts to extort money from the [street vendor] based upon the threat that [Ms. Escobar] would spread false or reckless allegations against him[.]"  Gov't Resp. Mot. Lim. 4.

It is for precisely this reason that Rule 404(4)(3) guarantees defendants "a fair opportunity to meet" 404(b) evidence by reasonable, advance written notice.  Fed. R. Evid. 404(b)(3)(A); see United States v. Fey, 89 F.4th 903, 911 (11th Cir. 2023) "Rule 404(b) and the commentary on the 2020 amendments make clear that written notice of character evidence and the non-character purpose for which it is to be introduced is required absent a finding of good cause.").  Because the government waited until after the motions and motions-in-limine deadlines had long passed; because the government shoehorned its defective notice into a purported Response to a defense motion addressing 404(b) evidence on a different topic, a Response which was itself late; and

5

because, most of all, the government has provided no reason sufficient to justify the lateness and manner of its notice, the Court should exclude all the government's proffered 404(b) evidence on timing and notice grounds alone.

**B.      The government proffers a strained, nonsensical theory of admissibility for evidence surrounding an unrelated altercation with a street vendor.**

The government's proposed evidence relating to the street vendor imbroglio is also inadmissible because it is other-act evidence squarely barred by Rule 402's ban on irrelevant evidence, because it is being offered to show propensity or bad character, because there is no non-propensity path to admissibility under 404(b), and because it is (and is designed to be) merely inflammatory and distracting to the jury. See Fed. R. Evid. 403. Additionally, it is clear that substantiating anything about the dispute in this federal trial would involve the calling of multiple witnesses, and the testing and review of extensive evidence relating to an entirely collateral matter. Attorneys sometimes refer to this sort of thing as a "mini-trial," but "mini" seems inadequate to capture the scope of the extrinsic evidence here.

Set to one side the government's lack of discovery production beyond a few jumbled images sent to defense counsel on a Friday afternoon, or any substantiation beyond unsworn statements in briefing. Take the allegations, to the extent they're specific enough to be cognizable, at face value. What has the government alleged? That Ms. Escobar argued with someone online, reported him to the manager of a farmer's market, and demanded that he expiate some supposed wrongs by donating to charity. See generally Gov't Resp. Mot. Lim. The government claims that this behavior, if committed, would tend to show a) Ms. Escobar's character for truthfulness, or b) her zealous opposition to the policies of the Trump administration, thus making it more likely that she was the person who, it is alleged, wrote "fuck ICE" on metal barriers outside Roybal.

The former contention, about truthfulness, makes no sense. What does calling a person a racist, feuding with them online, reporting them for some purpose to the

organizer of a farmer's market, and demanding payment to a charity, have to do with character for truthfulness?[1]  Furthermore, as the government appears to see, the matter is both wholly extrinsic to the facts that will be discussed at trial, and only relevant, if at all, with respect to Ms. Escobar's character for truthfulness as a testifying witness. See Fed. R. Evid. 608.  Were Ms. Escobar to testify, and for the reasons explained here, it is very doubtful that questioning on these collateral matters would bear any relation to her character for truthfulness, but it is also unnecessary for the Court to opine on a question not before it.

The latter contention, about 404(b), fares no better, although it also manifests the government's real purpose:  to claim that the street vendor contretemps is somehow relevant if Ms. Escobar presents a self-defense argument, which, as the government well knows from having had the benefit of reading her Response to its own Motion in Limine, she may seek to do.  See Def. Resp. Mot. Lim., ECF No. 50.  The government offers the spurious argument that Ms. Escobar's dispute with the street vendor might tend to show, were there a dispute, that she was the person who wrote "fuck ICE" on metal barriers and bollards at Roybal.  See Gov't Resp. Mot. Lim. ("[T]hese actions in zealous opposition of the current administration policies would also be probative of her identity[.]").  Because Ms. Escobar is supposed to belong to a different political party than the President does not make it more likely that she was a particular person protesting the President, were there to be a dispute about that person's identity.[2]  As

---

[1] Perhaps recognizing that the most obvious answer to this question is "nothing," the government interlards its description of Ms. Escobar's supposed conduct with the words "false" and "falsely."  See Gov't Resp. Mot. Lim. 3–4.  However, the only specifically false thing Ms. Escober is said to have stated is that the street vendor was a "racist."  Since disagreement about that point is, one infers, at the core of whatever dispute actually occurred, if any, it is difficult indeed to see how the claim, or actions taken based on believing it, manifest a character for "truthfulness," rather than instead a genuine belief that the street vendor was a racist.

[2] Formally, the fallacy at work here is known as base rate neglect, or the base rate fallacy.  See Base Rate Fallacy, Wikipedia, https://en.wikipedia.org/wiki/Base_rate_fallacy (last visited Mar. 20, 2026).  The argument's structure is:  the unknown protester has trait T (opposition to the President).

with the 608 argument, however, the government makes it only to disclaim it except in the special case where Ms. Escobar contests identity. See Gov't Resp. Mot. Lim. 4 ("The use of 404(b)-type evidence would be limited to a a [sic] scenario where defense denies that the identity of the individual alleged to be the defendant in the video is their client.").

The real weight of the government's argument (and intent), however, is with the subsequent claim that "her use of threats of violence . . . would bear upon a claim by Escobar that her assault of an FPS inspector (spitting in his face) was an act of self defense." Id. Since there is no conceivable dispute about Ms. Escobar's identity at the moment she is alleged to have spit at an FPS officer while in the physical custody of the officer and one of his brother officers, the government must mean that something about Ms. Escobar's having quarreled with a street vendor makes it less likely that she acted in self defense by allegedly assaulting the officer. The government does not say what the something is, but it presumably means intent, motive, or lack of accident. See Fed. R. Evid 404(b).

To put it lightly, however, Ms. Escobar's squabble with a merchant at a farmer's market is far removed from whatever her intentions with respect to allegedly assaulting an FPS officer on July 17, 2026 might be. The squabble could only be relevant, on this theory, because it manifests a general political sentiment. By that logic, the political affiliation and identity of any person charged with assault related to protests in 2025 and 2026 would be relevant, admissible evidence under Rule 404(b). The government has not, to the knowledge of the undersigned, been so unwise as to claim in any other such case in the Central District of California to date that it is entitled to introduce, for example, evidence that the defendant is a registered Democrat, makes political

---

Person Y also has trait T. Therefore Y is more likely the protester. But trait T is shared by potentially millions of people. Knowing Y has that trait barely moves the needle on Y specifically being the unknown person, because the prior probability of any single individual being the protester is vanishingly small, and the shared trait does almost nothing to narrow the field.

donations, or engages in First-Amendment protected political speech and the like, as 404(b) evidence against a defendant.  And rightly so; such extrinsic, irrelevant evidence would not only fail the test of admissibility under Rules 402, 403, and 404, but would manifest nakedly an intent to prosecute political opponents rather than lawbreakers.

Because the evidence at issue is irrelevant, highly prejudicial, and offered for an impermissible character or propensity purpose, the Court should deny the government's untimely request to deem the evidence admissible if Ms. Escobar seeks a self-defense instruction, or under any other circumstance.

### III.  CONCLUSION

The government has attempted to notice 404(b) evidence in late Response to a timely filed Motion, 11 days before trial.  It has offered no justification for the late notice, and offered a spurious theory of non-propensity relevance for various supposed misdeeds by Ms. Escobar it has not substantiated to Ms. Escobar or the Court.  The Court should grant Ms. Escobar's original Motion and furthermore prohibit the government from presenting any evidence or argument relating to Ms. Escobar's supposed harassment of a street vendor.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  March 24, 2026          By  /s/ Samuel Cross

SAMUEL CROSS
IBOH UMODU
Deputy Federal Public Defenders
Attorneys for ERIN PETRA ESCOBAR

9