CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
SAMUEL CROSS (Bar No. 304718)
(E-Mail: sam_cross@fd.org)
IBOH UMODU (Bar No. 367345)
(E-Mail: iboh_umodu@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ERIN PETRA ESCOBAR

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:25-cr-00656-AB |
| Plaintiff, | |
| v. | **NOTICE OF JOINDER IN DEFENDANT GUTIERREZ'S NOTICE OF AND REQUEST REGARDING BRADY VIOLATION, ECF No. 72** |
| ERIN PETRA ESCOBAR and NICK ELIAS GUTIERREZ, | |
| Defendants. | |

1

Erin Escobar, by and through her counsel of record, Deputy Federal Public Defenders Samuel Cross and Iboh Umodu, hereby files Erin Escobar's Joinder of Defendant Gutierrez's Notice of Brady Violation and Request for Order to Produce Brady Discovery.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  March 29, 2026

By  */s/ Samuel Cross*

SAMUEL CROSS
IBOH UMODU
Deputy Federal Public Defender
Attorney for ERIN PETRA ESCOBAR

2

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

Defendant Gutierrez filed a Notice of <u>Brady</u> Violation and Request for <u>Brady</u> Discovery on March 27, 2026. ECF No. 72. Defendant Gutierrez's Request explained that a Los Angeles Times article, published on the same date as the Request's filing, had reported statements made by Joseph Mazzara, former Acting General Counsel for the Department of Homeland Security (DHS). <u>Id.</u>; <u>see</u> Andrea Castillo, <u>DHS Attorney Said Agents in Los Angeles Should Have 'Started Hitting' Protesters, Emails Show</u>, L.A. Times (Mar. 27, 2026), ECF No. 72-1, https://perma.cc/25K2-35YW. Per the article, Mr. Mazzara stated: "They should have, when they brought the line in, just started hitting the rioters and started arresting everyone that couldn't get away from them. No one likes being hit by a stick, and people tend to run when that starts happening in earnest." <u>Id.</u>

Codefendant Gutierrez's Request argues the government's nondisclosure of these statements was a violation of the government's disclosure obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). <u>See</u> Gutierrez Not. 3–5. Ms. Escobar agrees, and wishes to provide the Court with a copy of the email about which the Times reported. Mazzara Email, Ex. A. This email, dated June 11, 2025, was obtained from the website of American Oversight, a "nonprofit watchdog group" to whom the government sent the documents in response to a Freedom of Information Act (FOIA) request. Castillo, <u>supra</u>; Cross Decl. ¶ 3. The email was apparently written by acting general counsel of DHS, the parent agency of the Federal Protective Service (FPS), whose inspectors are at issue in the instant case. Mazzara expresses the opinion that FPS agents should have used violence indiscriminately to disperse protestors outside the Roybal building. Mazzara Email.

The court can and should enter an order compelling the government to produce this email and all emails directly related to this email, as well as any documents or communications discussing the email's directive on reasonable force. Ms. Escobar's due-process rights are not protected only by "the government's self-executing duty to

disclose Brady material." United States v. Shetty (Shetty I), No. 2:23-cr-84-TL, 2024 WL 4979830, at *6 (W.D. Wash. Dec. 4, 2024).  The Court safeguards those rights, as well, and it can and should enter a pretrial (or midtrial) order directing the government to "review files" in related litigation and to produce any information that is "(1) responsive to [Ms. Escobar's Brady] discovery requests and (2) favorable to [her]." Id.; see also United States v. Shetty (Shetty II), No. 2:23-cr-84-TL, 2025 WL 348716, at *4 (W.D. Wash. Jan. 30, 2025) (on reconsideration, reaffirming Shetty I but permitting government to summarize Brady evidence where case file to be searched included 7 terabytes of data from ongoing international cryptocurrency investigation across the country).

Three important points support an order to review and produce here.  First, Brady requires disclose even if the evidence is in the government's possession by virtue of litigation or investigations in another district.  Shetty I, 2024 WL 4979830, at *4–6. Second, "the materiality standard usually associated with Brady" on a more stringent post-conviction review "should not be applied to pretrial discovery of exculpatory materials." Id. at *3 (quoting United States v. Cloud, 102 F.4th 968, 979 (9th Cir. 2024)).  Instead, third, even where there are doubts about whether evidence is favorable or likely to be useful to the defense, the government's court-ordered review and production "should resolve such doubts in favor of full disclosure." Id. (quoting United States v. Van Brandy, 726 F.2d 548, 552 (9th Cir. 1984)).

The principles supporting Shetty's pretrial Brady order apply even more simply here—both in terms of the Court's analysis and the government effort required.  The government must review (and already should have reviewed) evidence and communications relating to another Department of Justice litigation about the use of force against protestors in the same city, on the same property, and during the same immigration-enforcement campaign.  And unlike the massive, years-long, out-of-state file in Shetty, the timeline to be searched here involves a narrow span of weeks, and the events and litigation were all within California.  Furthermore, there is every reason to

think that an email from DHS's acting general counsel regarding use of force policies, made weeks before the events that gave rise to the instant case, would have resulted in explicit or implicit changes to the policies and practices of FPS inspectors like the government's witnesses in Ms. Escobar's case.

In addition, Ms. Escobar believes the government must make diligent search for, and provide, at a minimum:  any and all communications between DHS/FPS leadership and the LA field office; training materials, briefings, or operational orders; internal communications among FPS inspectors at the scene; any documents produced or reviewed in the related litigation that occasioned Mr. Mazzara's email; and the full FOIA production provided to American Oversight.  The L.A. Times reports that, apparently, the government intended to withhold Mazzara's email in its FOIA production.  As noted, the email appears to express a wish that FPS inspectors commit batteries on protesters.  The government's attempt to conceal this information, and its closely related failure to comply with <u>Brady</u> in this case, are, to say the least, troubling.  Ms. Escobar is entitled to find out exactly how far these violations go.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  March 29, 2026                   By   /s/ *Samuel Cross*

SAMUEL CROSS
IBOH UMODU
Deputy Federal Public Defender
Attorney for ERIN PETRA ESCOBAR

5