CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
SAMUEL CROSS (Bar No. 304718)
(E-Mail:  sam_cross@fd.org)
IBOH UMODU (Bar No. 367345)
(E-Mail: Iboh_Umodu@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone:  (213) 894-2854
Facsimile:  (213) 894-0081

Attorneys for Defendant
ERIN PETRA ESCOBAR

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>              Plaintiff,<br><br>       v.<br><br>ERIN PETRA ESCOBAR and<br>NICK ELIAS GUTIERREZ,<br><br>              Defendants. | Case No. 2:25-cr-00656-AB<br><br>**DEFENDANT ESCOBAR'S SUPPLEMENT IN SUPPORT OF MOTION TO EXCLUDE TRIAL PRINTOUT** |

Defendant Erin Petra Escobar, by and through her undersigned counsel, hereby files her supplement to her previously filed motion to exclude the government's proffered trial printout, ECF No. 73.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  March 30, 2026          By  */s/ Samuel Cross*
_____
SAMUEL CROSS
IBOH IMODU
Deputy Federal Public Defenders
Attorneys for ERIN PETRA ESCOBAR

### <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

This supplement addresses two issues raised as the Court considered the parties' arguments concerning the double-hearsay inventory printout the government has prepared for trial.

First, does the Ninth Circuit's carveout from Federal Rule of Evidence 803(8), for routine, nonadversarial, ministerial observations, apply—moments after a purported crime—to an officer's statement that he observed the defendant's possession of the supposedly criminal tool?

Second, can the Court trust that statement without knowing who made it, when it was recorded, or why it was produced in a conspicuously blank format on the eve of trial?

The answer to both questions is no.

**Ministerial observations.**

By its plain text, Federal Rule of Evidence 803(8) excludes from its exception to the hearsay rule statements comprising, "in a criminal case, a matter observed by law-enforcement personnel." Fed. R. Evid. 803(8)(A)(ii). That is, matters observed by law enforcement personally cannot be admitted under 803(8) in a criminal case. However, there exists a so-called "ministerial exception," essentially an exception to the exception that applies when the actions at issue are purely ministerial. The Court asked the parties whether the printout might fall within that exception. That is, whether the printout is one of the "sundry sorts of public documents for which no serious controversy ordinarily arises about their truth, and it would be a great waste of time to have the person who created them come to court and testify, such as birth certificates, death certificates, judgments, licenses, and the like." <u>United States v. Orellana-Blanco</u>, 294 F.3d 1143, 1150 (9th Cir. 2002).

This is not one of those sundry formalities. The Court pointed the parties to <u>United States v. Fryberg</u>, which confirms the point. There, the Ninth Circuit explained that "the purpose of the law enforcement exception is to exclude observations made by

officials at the scene of the crime or apprehension."  854 F.3d 1126, 1132 (9th Cir. 2017) (quotation marks and emphasis omitted).  The only exception to that exception is for "records of routine, nonadversarial matters made in a nonadversarial setting, reflecting ministerial, objective observations."  Id.

Applying that standard, the trial printout cannot go to a jury.[1]  The original inventory list was apparently created upon Ms. Escobar's apprehension at the scene of that apprehension.[2]  Officers had just told her they would charge her with assault on one of them.  One officer—perhaps even one of the same officers—searched a bag for evidence of her alleged crimes and then reported having found the criminal implement.  The person searching was conducting an active investigation into an alleged crime against one of his colleagues that had occurred moments before.  For all the defense knows, the search might have been conducted by the purported victim himself.

---

[1] Ms. Escobar contends that this ministerial exception lacks any textual basis in Rule 803(8).  Courts have now squarely rejected the out-of-date interpretive techniques, driven by purpose and legislative history, that were used to fashion the ministerial exception.  Compare United States v. Orozco, 590 F.2d 789, 793–94 (9th Cir. 1979) (concluding that the text of Rule 803(8) applied to the officer in question—but setting that text aside based on legislative history and policy, because his statement was "not of the adversarial confrontation nature which might cloud [the officer's] perception" such that Congress would not have "intend[ed]" its exclusion), with Coney Island Auto Parts Unlimited v. Burton, 146 S. Ct. 579, 584 (2026) (instructing that the federal rules' "drafting history" and "policy concerns" may not "carry any weight" unless the Court first concludes the "Rule's language is ambiguous"); 30B Wright & Miller, Federal Practice & Procedure § 6885 (describing as perhaps "too cavalier" the courts' "offhand judicial deviation from the rule's text on the ground that the courts can better effectuate legislative intent through adding dispositive terms to the rule like 'ministerial'").  Ms. Escobar reserves her right to seek review of this atextual authority on appeal.

[OR: Ms. Escobar contends that any ministerial exception cannot be squared with the plain text of Rule 803(8), and she reserves her right to challenge that exception in any appeal.]

[2] The government may now contend that the original inventory list was generated at a distance in time and space from Ms. Escobar's arrest.  If it does so based on additional undisclosed data concerning when the inventory list was created in its systems, Rule 1003 would require excluding the trial printout.  As Ms. Escobar has explained, if the trial printout reproduces only a portion of the original entry—without the original's date, time, and identifying information—then it cannot be admitted without (at a minimum) production of the complete original.  See ECF No. 73, at 3–5.

Searching a just-arrested defendant for the tool she allegedly just used to commit the crime?  That is as adversarial and non-routine an observation as it gets.  Officers sometimes process and catalog property in routine contexts, but that does not matter for purposes of this highly charged context, in the moments after an alleged assault.  The inventory list here "might not have been used for law enforcement purposes" had Ms. Escobar not been charged, but "it was in fact used for that purpose, and in the natural course would be" for any arrestee who had just moments before allegedly assaulted a federal officer.  Orellana-Blanco, 294 F.3d at 1150.  Thus, it falls "within the criminal case exclusion to the exception for public records."  Id.

**Trustworthiness.**  Even if Rule 803(8)(A) is satisfied, subsection (B)'s trustworthiness provision poses an independent barrier.  It does not just go to weight.  Even if a public record qualifies under Rule 803(8)(A), the Court must still exclude it if "the source of information or other circumstances indicate a lack of trustworthiness."  Fed. R. Evid. 803(8)(B).  And even if inventory lists as a general matter may be admissible public records, the Court must still ask whether *this* unattributed, mostly blank list is.

It is not clear where in the trial printout the Court could look for something to trust.  To that end, Ms. Escobar need not "introduce affirmative evidence of untrustworthiness."  Fed. R. Evid. 803(8) advisory committee's note to 2014 amendment.  It is enough that the list—compiled after officers informed Ms. Escobar she would be charged with assault—was "prepared in anticipation of litigation and is favorable to the preparing party," a showing Ms. Escobar can and has made here "without needing to introduce evidence on the point."  *Id.*

Nobody seems to know who the source of this information was, and the Court therefore cannot even begin the analysis of the unidentified source's reliability.  That makes this case like *United States v. Sosa*, where the Ninth Circuit acknowledged that immigration files "generally are admissible" under Rule 803(8) but affirmed the exclusion of an unattributed note in the particular file at issue.  608 F. App'x 464, 467

3

(9th Cir. 2015) (unpublished). That anonymous note "falls outside the bounds" of Rule 803(8)(B)'s reliability standard, the Court held, adding that "it is not known who made the notation or under what circumstances." *Id.*

That is precisely the issue here: the government has shielded an officer's identity from the defense for reasons it has yet to disclose. All these rules—hearsay, original document, and Confrontation—are pushing at the same bottom line.

Ms. Escobar has a right to confront the officer whose testimonial statement the government intends to use to convict her. Her counsel has the right to determine whether that officer has been convicted of perjury or disciplined for evidence mishandling. And they have a right to probe that officer's credibility and potential for bias in front of the jury.

The Court should exclude the trial printout as hearsay not falling within the public-records exception. If it disagrees, the Court nevertheless must address Ms. Escobar's independent Rule 1003 and Confrontation Clause arguments, and the printout should be excluded on those grounds, as well.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED:  March 30, 2026          By  */s/ Samuel Cross*

SAMUEL CROSS
IBOH IMODU
Deputy Federal Public Defenders
Attorneys for ERIN PETRA ESCOBAR

4