TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division
WILLIAM KANELLIS (Cal. Bar No. Pending)
LLOYD MASSON (Cal Bar No. 270182)
Assistant United States Attorneys
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 453-8455/(213) 894-6947
     Facsimile: (213) 894-0141
     E-mail:    William.Kanellis@usdoj.gov
                Lloyd.Masson@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No.  2:25-CR-00656-AB |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE AND MOTION FOR MISTRIAL |
| v. | |
| ERIN PETRA ESCOBAR and NICK ELIAS GUTIERREZ, | |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the First Assistant United States Attorney for the Central District of California and Assistant United States Attorneys WILLIAM KANELLIS and LLOYD MASSON, hereby files its Opposition to Defendants' Motion to Dismiss With Prejudice and Motion for Mistrial.

This Opposition is based upon the attached memorandum of points and authorities and Exhibit A attached thereto, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 1, 2026    Respectfully submitted,

TODD BLANCHE
Deputy Attorney General
BILAL A. ESSAYLI
First Assistant United States
Attorney

ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division


      /s/
_____
WILLIAM KANELLIS
LLOYD MASSON
Assistant United States Attorneys

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.    INTRODUCTION**

On the first day of trial, during testimony by the government's second witness, the Court heard argument on an oral motion to dismiss raised by defendants ESCOBAR and GUTIERREZ.  Defense's motion was based on the government's late disclosure of Federal Protective Services ("FPS") reports, attached hereto as **Exhibit A.**  During oral argument on this motion, defendants argued that the reports constituted <u>Brady</u> material, and that the appropriate remedy was dismissal of the indictment with prejudice, or in the alternative, a mistrial.  The government argued that the reports were not material under <u>Brady</u> and that there are other remedies available to cure any prejudice suffered by the defense due to the late disclosure.

The government requested the opportunity to provide additional briefing to the Court, and in particular to address the issue of the appropriate remedy in this case.  For the reasons outlined below, even if the Court were to determine that the reports constitute <u>Brady</u> material, dismissal with prejudice is not justified here.

**II.    SUMMARY OF FPS REPORTS AT ISSUE**

As the government explained during oral argument on April 1, 2026, the FPS reports at issue summarize incidents where force is used by FPS inspectors.  The late-disclosed FPS reports relating to ESCOBAR and GUTIERREZ include narratives of isolated aspects of events that earlier-disclosed discovery described, <u>i.e</u>, (1) ESCOBAR's depredation of federal property, efforts to evade arrest, and assault of Mr. Cheung; and (2) GUTIERREZ's assault of Mr. Mutuc and Mr. Stubbs.  There are semantic and detail-level differences between earlier-disclosed discovery and these late-disclosed reports.  These

late-disclosed reports also include narratives of use of force from witnesses the Government did not intend to call to testify at trial – narratives which do not conflict with those offered by testifying witnesses nor with earlier-disclosed discovery.

## III. LEGAL STANDARD

The Ninth Circuit has recognized that dismissal of an indictment with prejudice is a severe remedy; thus, "[t]he Court may declare a mistrial if the district court determines that the dismissal was <u>required</u> by 'manifest necessity.'" <u>United States v. Bonas</u>, 344 F.3d 945, 948 (9th Cir. 2003) (emphasis added).

As relevant here, a district court may dismiss an indictment "under its supervisory powers." <u>United States v. Chapman</u>, 524 F.3d 1073, 1084 (9th Cir. 2008). To justify dismissal under the Court's supervisory powers, the government's conduct must be (1) flagrant and (2) cause substantial prejudice to the defendant. <u>United States v. Jacobs</u>, 855 F.2d 652, 655 (9th Cir.1988); <u>Chapman</u>, 524 F.3d at 1085. "[A]ccidental or merely negligent governmental conduct is insufficient to establish flagrant misbehavior." <u>Chapman</u>, 524 F.3d at 1085.

Upon a finding of flagrant conduct, the Court may dismiss the indictment only if the defendant will suffer " 'substantial prejudice' and where 'no lesser remedial action is available.' " <u>Id.</u> at 1087 (internal citation omitted). <u>See also</u> <u>United States v. Ross</u>, 372 F.3d 1097, 1110 (9th Cir.2004) (stating "the proper prejudice inquiry is whether the government conduct 'had at least some impact on the verdict and thus redounded to [the defendant's] prejudice' " and noting "this is a less stringent standard than the Brady materiality standard").

2

## IV.   ARGUMENT

### A.   The FPS Reports Do Not Fall Under Brady

As discussed in depth during oral argument on April 1, 2026, the government does not believe any of the disclosed information falls under Brady.[1]  But even if the Court were to find that the information were material under Brady, the information was disclosed in time for the defense to use it at trial and prepare for its defense.  "[T]here is no Brady violation so long as the exculpatory or impeaching evidence is disclosed at a time when it still has value" to the defense.  United States v. Houston, 648 F.3d 806, 813 (9th Cir. 2011) (citations omitted).  Information has "value" if it is disclosed to the defense "in time for it to be of use at trial." United States v. Fernandez, 231 F.3d 1240, 1248 n.5 (9th Cir. 2000) (citations omitted).  Indeed, Brady does not even "require that the prosecution turn over exculpatory material before trial" at all, so long as the information is "disclosed to the defendant[]" while "still of substantial value at trial."  United States v. Gordon, 844 F.2d 1397, 1403 (9th Cir. 1988) (first emphasis in original and second emphasis added).

In this case, the information was disclosed when the trial AUSAs learned of the existence of the reports during cross-examination of

---

[1] Brady material is information "material to the guilt or innocence of the accused."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  That includes impeachment evidence.  Giglio v. United States, 405 U.S. 150, 154 (1972).  Specifically, Brady "requires disclosure only of evidence that is both favorable to the accused and material either to guilt or to punishment."  United States v. Bagley, 473 U.S. 667, 674 (1985).  To be material, there must be a "reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense" earlier. Houston, 648 F.3d at 813.

3

the government's first witness.[2]  The Court took a recess shortly into the direct examination of the government's second witness.  The defense has the opportunity to recall the first witness to inquire into the reports as needed, and can address the reports with all subsequent witnesses.  Additionally, the government indicated its willingness to make any other officer referenced in the new reports available to testify.

Gordon is instructive.  Even though the Gordon defendants had "requested all Brady material in a pretrial motion," the government failed to produce a visitor's log constituting Brady material until after resting its case-in-chief.  Id. at 1403.  The relevant witness had already testified.  Id.  The Ninth Circuit rejected any argument that the late disclosure violated Brady.  Because the "court agreed to allow defendants to recall" the witness and "reexamine him about the documents," that opportunity "cure[d] any prejudice caused by the delayed disclosure."  Id.

The Ninth Circuit has repeatedly reaffirmed Gordon's rule.  As long as it remains possible for the defense to use the information at trial (such as here), there is no Brady violation, exclusion is unwarranted, and dismissal is inappropriate.  In Houston, for example, the Ninth Circuit found no Brady violation when information was disclosed "while cross-examination was on-going."  648 F.3d at 813.  The information "still had evidentiary value to the defense because [it] could be used -- and [was] used -- during cross examination."  Id.  And in United States v. Span, 970 F.2d 573, 582

---

[2] As explained during oral argument, government counsel currently assigned to this case were not aware of the reports.  It appears that prior government counsel inadvertently failed to add the reports to the government's case file.

4

(9th Cir. 1992), the Ninth Circuit found no Brady violation when the information was disclosed after cross-examination, because the district court "gave defense counsel the opportunity to recall" the witness "for further cross-examination."  See also United States v. Juvenile Male, 864 F.2d 641, 647 (9th Cir. 1988) (no Brady violation when "exculpatory evidence came out during the trial," after the cross-examination of the victim).

The relevant question is not whether earlier disclosure could have been more helpful for the defense's investigation of the case; it is whether the Brady information itself "still has value" at trial.  Houston, 648 F.3d at 813; see also United States v. Vgeri, 51 F.3d 876, 880 (9th Cir. 1995) (no Brady violation for disclosure of impeachment of the cooperator during trial such that the defense could cross-examine the cooperator about it).  Here, it does, and there was no violation of Brady or any other rule justifying the dismissal of the indictment or declaration of a mistrial.

**B.    Defendant Was Not Substantially Prejudiced**

Defendant was not substantially prejudiced by the government's conduct.  Substantial prejudice is established where the government's conduct "has at least some impact on the verdict and thus redounded to the defendant's prejudice."  United States v. Ross, 372 F.3d 1097, 1111 (9th Cir. 2004); cf. United States v. Bagley, 473 U.S. 667, 682 (1985) (a court may find a Brady violation only if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.").

Given the availability of remedial options discussed below that address the specific harm experienced by defendant, dismissal is not warranted here.

C.    The Court Can Fashion Appropriate Remedies Besides
      Dismissal or Mistrial Here

"District courts have discretion in shaping the remedies for Brady and Giglio violations." United States v. Garrison, 888 F.3d 1057, 1065 (9th Cir. 2018). See also United States v. Burke, 571 F.3d 1048, 1054 (10th Cir. 2009) ("Where the district court concludes that the government was dilatory in its compliance with Brady, to the prejudice of the defendant, the district court has discretion to determine an appropriate remedy, whether it be exclusion of the witness, limitations on the scope of permitted testimony, instructions to the jury, or even mistrial.  The choice of remedy is in the sound discretion of the district court.").

The Ninth Circuit has upheld a variety of sanctions for failure to disclose exculpatory and impeachment information.  For example, in Garrison, the government repeatedly failed to timely disclose impeachment material regarding its two key cooperating witnesses, as well as other exculpatory and impeachment material.  888 F.3d at 1061-62.  Despite these "grave mistakes," id. at 1061, the Court found no error in the remedies the district court crafted—retaining the testimony but advising the jury of the government's failure to comply with its obligations and informing the jury that it could draw adverse inferences from this failure as to the witnesses' credibility and the defendants' guilt, id. at 1064-66.  In Struckman, the district court found that the government committed multiple Brady/Giglio violations, including failure to disclose a "secret deal" between a cooperating witness and an IRS agent to prevent a civil tax audit of the witness in exchange for his testimony.  611 F.3d at 570.  Noting that "remedies should be tailored to the injury

6

suffered . . . and should not unnecessarily infringe on competing interests," the Ninth Circuit held that the exclusion of evidence and testimony was a sufficient remedy for the Brady/Giglio violations. Id. at 577-78 (quoting United States v. Morrison, 449 U.S. 361, 364 (1981)). Similarly, in United States v. Dominguez, the government did not dispute the district court's findings that it committed numerous Brady/Giglio violations and conceded that it was "sloppy, inexcusably tardy, and almost grossly negligent." 641 Fed. Appx. 738, 740 (9th Cir. 2016) (unpublished). The Ninth Circuit held that the district court's choice of sanctions—including jury instructions, striking some testimony, and recalling witnesses—was entitled to substantial deference and adequately cured any prejudice from the violations. Id.

Here, the Court has several alternative sanctions available. First, the Court can provide additional days for the defense to further prepare and investigate the information provided in the reports, before resuming trial. Or the Court could inform the jury of the government's late disclosure and allow defense to question witnesses as to that disclosure. The Court could also strike testimony from the witnesses who have already testified. And of course, as the government explained during its oral argument on April 1, 2026, the government has agreed to facilitate the appearance of additional FPS Officers so that the defense can elicit their testimony.

**D.   Dismissal with Prejudice Is Not the Appropriate Remedy**

Defendants rely on Bundy in urging the court to dismiss the case with prejudice, but Bundy dealt with discovery related violations that struck at the heart of defense's case. Id. at 1028.

7

A core theory of the government's case alleged that the defendants had recruited a large number of armed followers based on lies that their ranch was surrounded by government snipers. Id. at 1025. To that end, the defense had explicitly requested any discovery related to government agents in tactical gear that were positioned around the Bundy Ranch. Id. As trial progressed the government began releasing new discovery no less than four different times, weeks after trial had begun. The court eventually granted a mistrial after the government produced yet more discovery midtrial that revealed there had in fact been snipers positioned around the Bundy ranch that had never been previously disclosed. Id.

Ultimately the court in Bundy held that "retrying the case would only advantage the government by allowing them to strengthen their witnesses' testimony based on the knowledge gained from the information provided by the defense and revealed thus far." Id. at 1043. Here, the late production of use of force reports in no way parallels the devastating effect of the discovery turned over midtrial in Bundy, which fundamentally altered one of the key pillars of the government's case. Id. Here the broad outlines of the defenses' theory of excessive force was always known, after requests for use of force manuals, requests for self defense instructions, and a pragmatic look at a case that is captured entirely on video.

Also, the Bundy trial started October 30, 2017, with a mistrial declared on December 20, 2017. In this case, only one government witness has completed his testimony. In this sense, there is no

8

windfall to the government that parallels what occurred in Bundy, were a retrial allowed.  The FPS Reports merely strengthen already established strategies for both parties, unlike Bundy where the new material would have drastically altered any retrial.

The Ninth Circuit's holding in United States v. Cloud, 102 F.4th 968, 980 (9th Cir. 2024), is instructive here.  The Cloud case demonstrates that dismissal with prejudice is not an appropriate remedy in this case.  In that case, the defendant was charged with murder, among other crimes, and the government's case relied heavily on the testimony of an eyewitness to the murder. United States v. Cloud, 590 F. Supp. 3d 1364, 1371 (E.D. Wash. 2022), aff'd, 102 F.4th 968 (9th Cir. 2024).  In the weeks leading up to the trial, the government had received information from both the eyewitness and the boyfriend of the eyewitness that indicated that the eyewitness may be fabricating her testimony in exchange for certain benefits from the government.  Cloud, 590 F. Supp. 3d at 1371.  The government, however, failed to disclose the information to defense counsel and the defense ultimately learned of the information through the eyewitness's own counsel on the night before the eyewitness was set to testify.  Id.  The Court found that the suppressed impeachment information clearly prejudiced the defense by hindering its investigation of the evidence, causing defense counsel to scramble to determine an appropriate course of action, and causing defense counsel to spend time and expenses on the eyewitness's reliability concerns as opposed to preparing the defendant's defense.  Id. at

1371-72.  Ultimately, the Court held that the suppression was a <u>Brady</u> violation.  <u>Id.</u> at 1372.

However, the Court found that dismissal of the indictment with prejudice was an "extraordinary remedy [that] [was] not warranted" where the prejudice could be mitigated by less severe remedies.  <u>Id.</u>  Instead, in reliance on its discretion to determine the appropriate remedy as endorsed by the Ninth Circuit in <u>Bundy</u>, the Court excluded the eyewitness from the government's case and applied a monetary sanction to reimburse defense counsel for the time and expenses spent on the suppressed information.  <u>Id.</u>  The Court found that these "remedies [were] the most closely tailored to the harm Defendant suffered from the Government's nondisclosure and do not excessively penalize the Government."  <u>Id.</u>  On appeal, the Ninth Circuit affirmed, finding that the district court's choice of "the less drastic remedy . . . was both a reasonable response to the Government's 'egregious conduct,' and correct as a matter of law."  <u>Cloud</u>, 102 F.4th at 981.

**V.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendants' requests for dismissal with prejudice and a mistrial.

**U.S. Department of Homeland Security**
Federal Protective Service **FPS Form 10**

## Officers Use of Force Report

### INCIDENT IDENTIFICATION INFORMATION

| FPS Incident Number: | OIG Incident File Number: | Additional FPS-10's / Same Incident: | Investigating Official: |
|---|---|---|---|
| 25026755D | | ☒ Yes ☐ No | |

| Program: | REGION | Office / Station: | Supervisor's Name/Title: | Supervisor's Telephone/e-mail: |
|---|---|---|---|---|
| FPS | 9 | Los Angeles | AC Daniel Dick | 213-999-1415 |

| Time of Incident: | Date of Incident: | Day of Incident: |
|---|---|---|
| 1300-1345 hours | 7/17/2025 | ☐ S ☐ M ☐ T ☐ W ☒ T ☐ F ☐ S |

| Number of Suspects: | Number of Involved FPS Officers: | Number of Officer Witnesses: | Number of Civilian Witnesses: |
|---|---|---|---|
| 1 | 12 | 10 Federal Officers/Agents | Unknown |

| Location/Address of Occurrence *(Include City, County, State and ZIP Code)*, or Describe Distance from Permanent Reference Points: |
|---|
| 255 E. Temple St., Los Angeles, CA, 90012 |

### INVOLVED OFFICER INFORMATION          *(Complete a Separate Form FPS-10 for Each Officer Involved)*

| Name (LAST, First MI): | Title: | Telephone: | Duty e-mail address: |
|---|---|---|---|
| Arnold, Jeffrey | Inspector | 628-213-6211 | Jeffrey.Arnold@fp |

| Sex: | Hand Usage: | Height: | Weight: | Age: |
|---|---|---|---|---|
| ☒ Male ☐ Female | ☒ Right-handed ☐ Left-handed | 5'9 | 160 | 42 |

| Duty Status: | If other agency in joint operation with FPS, list agency: |
|---|---|
| ☒ On Duty ☐ Off Duty | Federal:          State:          Local: LAPD |

**Operational Activity** *(Check all that apply)*:

☐ Patrol          ☐ Executing Search Warrant          ☐ Handcuffing          ☒ Other *(Explain)*:
☐ Surveillance          ☐ Executing Criminal Arrest Warrant          ☐ Transporting
☐ Interviewing          ☐ Executing Immigration Arrest Warrant          ☐ Searching Place          Civil Disobedience/Riot
          ☐ Arrest Without Warrant          ☐ Searching Person

| Distance from suspect at the time force was employed: | Officer Attire |
|---|---|
| ☒ 1 – 14 feet<br>☒ 15 – 30 feet<br>☐ 31 – 50 feet<br>☐ Over 50 feet | ☒ Uniform<br>☐ Plain Clothes with markings (raid jacket, body armor or similar)<br>☐ Plain Clothes (no visible markings) |

### FORCE USED BY OFFICER

**Level and Type of Force Used by Officer**

☐ Deadly   ☒ Intermediate   ☐ Intermediate Weapon

| Officer Injuries | Device Used by Officer |
|---|---|
| ☒ Not Injured<br>☐ Injured, no treatment required<br>☐ Injured, treated<br>☐ Injured, refused treatment<br>☐ Hospitalized<br>☐ Fatal | ☐ Handgun          ☐ Chemical Spray<br>☐ Rifle/Sub-gun          ☐ Chemical Canister/Munitions<br>☐ Shotgun          ☐ Impact Munitions<br>☐ Baton          ☐ Empty Hand<br>☐ ECD          ☒ Other (describe)<br>          Hands on |

**Brief Description of Incident (Memorandums, Reports of Investigation, Form 3155 Offense/Incident reports or similar may be attached)**



1

On July 17, 2025, I, Inspector Jeffrey ARNOLD (9P1746), was on duty and in full FPS uniform, clearly identifiable as a federal law enforcement officer under the authority of 40 USC §1315. I was assigned to Operation Skip Jack, supporting the physical security of the Los Angeles Federal Building located at 255 E. Temple Street, Los Angeles, CA. My assigned duty hours were 0600–1800 hours.

At approximately 1313 hours, I observed an adult male subject later identified via U.S. Passport as Erin Petra ESCOBAR (DOB: 12/26/1990), wearing a black helmet, sunglasses, black face covering, black jacket, black sports bra/tube-top style shirt (exposing the abdomen), black pants, white shoes, and carrying a backpack. ESCOBAR was actively vandalizing federal property by writing on the electrical control boxes and wedge barriers positioned outside the facility.

I documented this behavior using my issued government cell phone and immediately notified Area Commander (AC) Daniel Dick. Upon my notification, AC Dick responded, "We are going to get the one marking up the federal property." I pointed out the suspect, and we began moving toward his location. At this time, ESCOBAR appeared to recognize law enforcement presence and stepped off the public sidewalk onto Alameda Street in what appeared to be an attempt to evade apprehension.

Both AC Dick and I issued verbal commands for ESCOBAR to stop. He did not comply and continued briskly toward a protest encampment on the east side of Alameda Street. Upon entering the encampment, several individuals surrounded Commander Dick in what appeared to be an intentional effort to obstruct and interfere with the lawful arrest.

As Commander Dick and I attempted to physically gain control of ESCOBAR, I grasped ESCOBAR's right arm using both hands—my left hand securely holding his wrist and my right-hand gripping directly above the elbow. At that moment, an unidentified Hispanic male adult (HMA) suddenly intervened from the side, forcefully grabbing ESCOBAR by wrapping his arms around ESCOBAR's torso and pulling him away from our control. The HMA's pulling and forcibly yanking on ESCOBAR's body caused me to lose my grip, and ESCOBAR momentarily broke free from our grasp and began fleeing with the HMA northbound along the sidewalk adjacent to Alameda Street.

I immediately pursued on foot, along with Inspector Cheung (#1P1533). During the pursuit, Inspector Cheung made contact with the HMA and ESCOBAR in an effort to disengage him from ESCOBAR. I re-engaged ESCOBAR and regained control of his right arm, again securing his wrist with my left hand and placing my right hand firmly above his elbow to control his movement. At this point, as Inspector Cheung and I attempted to separate ESCOBAR from the HMA, all parties became entangled and lost balance.

The physical engagement resulted in all involved parties becoming entangled and falling to the ground in the middle of a busy intersection at Alameda Street and Commercial Street. Approximately four to six vehicles were in the immediate area—some in motion and others stopped due to our presence. We landed directly on the hot, hard asphalt pavement. As we went down, I fell onto the right side of my body. I felt the impact of my holstered duty weapon strike the pavement first, followed by the weight of my body landing on my right elbow and shoulder blade. Despite the fall, I maintained continuous control of ESCOBAR's right arm, keeping my left hand firmly gripping his wrist and my right hand positioned above his elbow.

I quickly repositioned myself, maneuvering onto both knees, which I planted firmly on the hot pavement on either side of ESCOBAR's torso. From this position, I pulled ESCOBAR's right arm behind his back and applied downward and inward pressure to bring his arm toward the small of his back. During this time, ESCOBAR continued to resist our efforts by forcefully twisting his torso, kicking his legs, and pulling against our physical control. He shouted statements such as, "Let me go!" "You will not take me!" and "I'm a U.S. citizen!" in a loud and agitated tone while ignoring repeated verbal commands to stop resisting.

As I maintained control of ESCOBAR's right arm, Inspector Cheung secured his left arm. Working in tandem, we successfully brought both arms behind ESCOBAR's back, at which point Inspector Cheung applied handcuffs. The handcuffs were double-locked in accordance with agency policy to ensure officer and subject safety. Once ESCOBAR was restrained, I conducted an immediate frisk of his waistband, lower back, and chest areas for weapons or contraband, with negative results.



EXHIBIT A

2

| Additional Comments |
| --- |
| |

**FPS Form 10**

## INVOLVED OFFICER FIREARM INFORMATION

*(List Additional Firearms Used by Same Officer on Supplement)*

| Manufacturer: | Model Name / Number: | Type *(Pistol, Rifle, etc.)*: | Rounds Fired: | Caliber: | Barrel Length: |
| --- | --- | --- | --- | --- | --- |
| Bullet Type: | Bullet Weight: | Firearm Ownership: ☐ FPS-issued ☐ Personal | | Additional Firearms Used: ☐ None ☐ See Supplement | |

## SUSPECT INFORMATION

*(Complete a Separate Form FPS-10 for Each Suspect Involved)*

| Name: Unknown | | AKA(s): | | Sex: ☐ Male ☐ Female | |
| --- | --- | --- | --- | --- | --- |
| Height: | Weight: | Age: | Ethnicity: | FBI Number: | Other Information: Multiple suspects |
| Prior Arrests *(Show Date, Offense and Disposition)*: | | | | | |

## SUSPECT WEAPON OR OTHER USE OF FORCE INFORMATION

*(Check all that apply)*

**Weapons possessed/ used by Suspect at time of arrest**

☐ Handgun ☐ Empty hands ☒ Other (Describe)
☐ Rifle/Carbine ☐ Vehicle
☐ Submachine Gun ☐ Animal        None
☐ Knife ☐ Chemical Device
☐ Other Cutting Instrument ☐ Explosive Device
☐ Blunt Instrument

**Suspect's injuries**

☒ Not injured        ☐ Injured, treated        ☐ Hospitalized
☐ Injured, no treatment required    ☐ Injured, refused treatment    ☐ Fatal

| Decontamination Required YES ☐ NO ☒ | If decontaminated, describe details (how, when, where, by whom) |
| --- | --- |

## FINAL OUTCOME OF INCIDENT and ADDITIONAL INFORMATION

| End Result | Officer's Misc Information |
| --- | --- |
| ☒ Suspect arrested by FPS<br>☐ Suspect Arrested by other agency<br>☐ Suspect hospitalized/pending further treatment<br>☐ Suspect fatality<br>☐ Animal destroyed<br>☒ Property damaged (description in comments)<br>☒ Other | ☐ Site walk through ☐ Performed ☐ Offered ☐ Not req'd<br>☐ 72 Hour post incident admin leave received ☐ Not req'd |

3



EXHIBIT A

At approximately 1320 hours, Inspector Cheung and I stood ESCOBAR up and escorted him across Alameda Street back onto federal property near the Roybal Federal Courthouse. While walking westbound—approximately ten feet west of the wedge barrier system—ESCOBAR abruptly turned his head and upper body toward Inspector Cheung and intentionally spat in his direction. I observed the saliva leave ESCOBAR's mouth and make direct contact with the right side of Inspector Cheung's face. This unprovoked action constituted an assault (under 18 U.S.C. 111) on a federal officer during the performance of official duties.

At approximately 1325 hours, we placed ESCOBAR in holding cell B-199, located at 300 N. Los Angeles Street. Inspector Roth (#934) conducted a search of ESCOBAR's property, and Special Agent Tommy Vasquez (#I78) subsequently conducted a custodial interview. All actions taken were necessary and in direct response to the subject's criminal behavior, failure to comply with lawful commands, physical resistance, and assaultive conduct. The use of force employed was limited to physical control techniques consistent with FPS use of force policy and federal law. No weapons, intermediate force options, or deadly force were used during this incident.

4

EXHIBIT A

**U.S. Department of Homeland Security**
Federal Protective Service **FPS Form 10**

<div align="right">

**Officers Use of Force Report**
</div>

## INCIDENT IDENTIFICATION INFORMATION

| FPS Incident Number: | OIG Incident File Number: | Additional FPS-10's / Same Incident: | Investigating Official: |
|---|---|---|---|
| 25026581D | | ☒ Yes ☐ No | |

| Program: | REGION | Office / Station: | Supervisor's Name/Title: | Supervisor's Telephone/e-mail: |
|---|---|---|---|---|
| FPS | 9 | Los Angeles, CA | Area Commander Dick, Daniel | (213) 999-1415/Daniel.m.Dick@fps.dhs.gov |

| Time of Incident: | Date of Incident: | Day of Incident: |
|---|---|---|
| 1325 hours | 17 July 2025 | ☐ S ☐ M ☐ T ☐ W ☒ T ☐ F ☐ S |

| Weather and / or Environment conditions: | Lighting conditions: |
|---|---|

| Number of Suspects: | Number of Involved FPS Officers: | Number of Officer Witnesses: | Number of Civilian Witnesses: |
|---|---|---|---|
| 1 | 4 | 3 | Unknown |

**Location/Address of Occurrence** *(Include City, County, State and ZIP Code)*, **or Describe Distance from Permanent Reference Points:**

255 East Temple Street Los Angeles, CA 90012

## INVOLVED OFFICER INFORMATION          *(Complete a Separate Form FPS-10 for Each Officer Involved)*

| Name (LAST, First MI): | Title: | Telephone: | Duty e-mail address: |
|---|---|---|---|
| Cheung, Cassidy | Inspector | (617) 945-3962 | Cassidy.Cheung@fps.dhs.gov |

| Sex: | | Hand Usage: | Height: | Weight: | Age: |
|---|---|---|---|---|---|
| ☒ Male | ☐ Female | ☒ Right-handed ☐ Left-handed | 70" | 240 | 34 |

| Duty Status: | If other agency in joint operation with FPS, list agency: | | |
|---|---|---|---|
| ☒ On Duty ☐ Off Duty | | State: | Local: |

**Operational Activity** *(Check all that apply)*:

☐ Patrol
☐ Surveillance
☐ Interviewing
☐ Executing Search Warrant
☐ Executing Criminal Arrest Warrant
☐ Executing Immigration Arrest Warrant
☒ Arrest Without Warrant
☒ Handcuffing
☐ Transporting
☐ Searching Place
☐ Searching Person
☐ Other *(Explain)*:

| Distance from suspect at the time force was employed: | Officer Attire |
|---|---|
| ☒ 1 – 14 feet<br>☐ 15 – 30 feet<br>☐ 31 – 50 feet<br>☐ Over 50 feet | ☒ Uniform<br>☐ Plain Clothes with markings (raid jacket, body armor or similar)<br>☐ Plain Clothes (no visible markings) |

## ON SCENE SUPERVISOR INFORMATION

| Name (LAST, First MI): | Title: | Telephone: | Duty e-mail address: |
|---|---|---|---|
| Dick, Daniel | Area Commander | (213) 999-1415 | Daniel.M.Dick@fps.dhs.gov |

## FORCE USED BY OFFICER

**Level and Type of Force Used by Officer**

☐ Deadly   ☒ Intermediate   ☐ Intermediate Weapon

<div align="center">

# EXHIBIT A
</div>

5

| Officer Injuries | Device Used by Officer | |
|---|---|---|
| ☒ Not Injured <br> ☐ Injured, no treatment required <br> ☐ Injured, treated <br> ☐ Injured, refused treatment <br> ☐ Hospitalized <br> ☐ Fatal | ☐ Handgun <br> ☐ Rifle/Sub-gun <br> ☐ Shotgun <br> ☐ Baton <br> ☐ CEW/ Taser | ☐ Chemical Spray <br> ☐ Chemical Canister/Munitions <br> ☐ Impact Munitions <br> ☒ Empty Hand <br> ☐ Other (describe) |

**Brief Description of Incident (Memorandums, Reports of Investigation, Form 3155 Offense/Incident reports or similar may be attached)**

EXHIBIT A

6

On 17 July 2025 at approximately 1315 hours, while conducting officer standby at the Edward R. Roybal Federal Building and U.S Courthouse located at 255 East Temple Street Los Angeles, CA 90012 for Operation Skip Jack Los Angeles I witnessed the SUBJECT drawing graffiti on federal property.

The SUBJECT in question is approximately 5 feet 5 inches tall wearing a black in color bicycle helmet with a black in color facemask covering the SUBJECT's lower half of their face from the nose down to their neck and a gray backpack. The SUBJECT was also wearing a black in color long sleeve button down short that was unbuttoned exposing their upper torso the SUBJECT was also wearing a black in color crop top approximately 6 inches wide wrap around the chest area of the SUBJECT. The SUBJECT also wearing black in color sweatpants with white in color sneakers.

I first observed the SUBJECT drawing graffiti on the top of electrical box on North Alameda Street in between the two vehicle barriers of the loading dock of Roybal Federal Building with a black sharpie marker at approximately 1311 hours. The SUBJECT moved from the electrical box to the left side electrical box vehicle barrier drawing "Fuck ICE" on multiple locations on the vehicle barrier. The SUBJECT moved from the left side barrier to the right-side vehicle barrier drawing graffiti of "Fuck ICE" on varies locations on the right-side vehicle barrier.

During the SUBJECT drawing graffiti, Inspector AMARAL took multiple pictures of the SUBJECT and notified Area Commander (AC) RODRIGUEZ. AC DICK arrived on scene and gave the approval to place the SUBJECT into custody for vandalism of federal property (Preservation of Property 41 CFR 102-74.380 (b) willfully destroying or damaging property). Upon approval approximately 10 – 15 Federal Protective Service (FPS) Inspectors with AC DICK in the lead proceeded to cross the street to place the SUBJECT into custody.

While crossing the street, I observed the SUBJECT run under the blue canopy tent that was set up on location since 11 July 2025. The SUBJECT proceeded to take his helmet and facemask off while attempting to hide behind another individual. One Inspector ran over to the blue tent canopy with me (Inspector Cheung) following behind attempted to pull the SUBJECT out to be placed into custody. The SUBJECT was able to break free from my control due to unstable footing and multiple other protestors pulling the SUBJECT away from myself. After the SUBJECT broke free, the SUBJECT was escorted away by another protestor that was approximately 5 feet 10 inches and approximately 250 – 300 pounds wearing a black in color t shirt, black in color in hat, black in color pants and black in color sneakers towards East Commercial Street.

As the SUBJECT and his escort were heading to East Commercial Street, an Inspector inquired if the SUBJECT was being placed into custody. I replied with yes and proceeded to initiate a foot pursuit to place the SUBJECT into custody. While running towards the SUBJECT, I observed Inspector CASTOR run in front of the SUBJECT and escort to stop them from proceeding any further. Upon catching up to the SUBJECT, I gained control of the SUBJECT by the arm and shoulders to direct them towards the Roybal Federal building. While attempting to bring the SUBJECT to Roybal, the SUBJECT and his escort were pushing me back and forth and lost balance and ended on the ground on the street. When both the SUBJECT and his escort fell, I followed with them falling and landed top of the SUBJECT and his escort.

While on the ground with the SUBJECT, I gave the SUBJECT verbal commands to "place your hands behind your back". I had control of the SUBJECT right wrist and attempted to pull the SUBJECT's right hand to the small of their back. While attempting to pull the SUBJECT's right hand to his back, another Inspector pulled the SUBJECT's escort who was on the left side of the SUBJECT off the ground and away from me and the SUBJECT. Inspector ARNOLD then arrived to help gain control the SUBJECT's right arm. When Inspector ARNOLD gained control and held the SUBJECT's right hand at the small of his back, I proceeded to grab my handcuffs on the back left of my duty belt with my left hand and transferred the handcuffs to my right hand to place on handcuff on the SUBJECT's right wrist while Inspector RIORDAN approached from the left side in attempt to gain control of the SUBJECT's left arm. The SUBJECT was actively resisting by moving his torso upwards the sky and pulling his left arm away from Inspector RIORDAN. Inspector RIORDAN then place his knee down to the SUBJECT's shoulder area to gain a bit more leverage to get gain positive control of the SUBJECT's left arm. After the Inspector RIORDAN gained control of the SUBJECT's left arm, he moved it to the small of his back so that the SUBJECT's left wrist can be secured with handcuffs.

After the SUBJECT was placed in handcuffs, I stood up and conducted an equipment check on myself to confirm that my Federal Protective Service (FPS) taser, firearm, OC spare, and extra magazines were still on my person. After confirming that all my equipment were on my person, Inspector ARNOLD and I assisted the SUBJECT onto his feet and escorted the SUBJECT towards the Ryobal Federal Building loading dock.

The SUBJECT while being escorted by Inspector ARNOLD and I, the SUBJECT was actively trying break free from our custody by throwing his body back and forth violently and shuffling his feet in multiple directions to stop the process from moving forward the Ryobal Federal Building. While walking across the street back to the Ryobal Federal Building, the SUBJECT was screaming 'help me, I am a U.S Citizen' to vehicle drivers and other protestors. While escorting the SUBJECT within the apron area, I heard an audible noise of the SUBJECT hawking and atua and felt silva hit below the right ear and jawline across my right cheek and a flying past my field of vision. I told the SUBJECT that he just spit on me and that is assault on a Law Enforcement Officer (LEO) (18 USC 111 Assaulting, Resisting or impeding certain officers or employees), and I heard Inspector ARNOLD stating that spiting on a LEO is considered assault. While walking towards the opening of the loading dock, the SUBJECT screamed that he would like to speak to his lawyer and stated that he had a U.S Passport in his backpack. While walking down the loading dock the most direct room to B199 (FPS holding cell), the SUBJECT continued to state he was a US citizen, and to talk to his lawyer, I told the SUBJECT to "Shut the Fuck Up" and escorted the SUBJECT B199 without any further outburst or active resistance.

The SUBJECT was searched by Inspector ROTH, and placed in the holding cell B.

A California Law Enforcement Telecommunication System (CLET) was conducted on the SUBJECT for wants and warrants past criminal history. The SUBJECT was clear on want, warrants and past criminal history. CLET is attached to this document.

Photos of the SUBJECT's Driver License, passport and credit card information is attached to this document.

The SUBJECT was arrested for 41 CFR 102-74.380 (Violating Preservation of Property) (b) willfully destroying or damaging property and 18 USC 111 Assaulting, Resisting or impeding certain officers or employees.


EXHIBIT A

7

**FPS Form 10**

**INVOLVED OFFICER FIREARM INFORMATION**            *(List Additional Firearms Used by Same Officer on Supplement)*

| Manufacturer: | Model Name / Number/ SERIAL NUMBER: | Type *(Pistol, Rifle, etc.)*: | Rounds Fired: | Caliber: | Barrel Length: |
|---|---|---|---|---|---|
| | | | | | |
| Bullet Type: | Bullet Weight: | Firearm Ownership: | | Additional Firearms Used: List all information for any additional Firearms | |
| | | ☐ FPS-issued ☐ Personal | | ☐ None  ☐ See Supplement | |

**INVOLVED OFFICER CEW/ TASER INFORMATION**

| Manufacturer: | Model Name / Number/ SERIAL NUMBER: | CARTRIDGE SERIAL NUMBER (S) | Cartride TYPE , | Number of Cartidges Fired | Number of Cycles applied: |
|---|---|---|---|---|---|
| | | | | | |
| | | Firearm Ownership: | | Additional CEWS Used: List all information for any additional Firearms | |
| | | ☐ FPS-issued ☐ Personal | | ☐ None  ☐ See Supplement | |
| **WAS NMI ACHIEVED**<br><br>☐ YES ☐ NO<br>☐ DISPLAY ONLY | **NEED FOR ADDITIONAL APPLICATIONS**<br>☐ YES ☐ NO | **DID TASEWR RESPOND SATIFACCTORY?**<br>☐ YES ☐ NO | **IF UNSUCESSFUL, WAS DRIVE STUN USED?,**<br>☐ YES ☐ NO | **Approximate distance between probes** | **Did Porbes penetrate subjects skin**<br>☐ YES ☐ NO |
| **Were PROBES REMOVED ON SCENE**<br>☐ YES ☐ NO<br>BY WHO? | | Firearm Ownership:<br><br>☐ FPS-issued ☐ Personal | | Additional CEWS Used: List all information for any additional Firearms<br>☐ None  ☐ See Supplement | |

**APPLICATION AREAS:**
**(Place "X's" where probes hit suspect AND *"O's" where stunned*)**



<span style="color:red">**EXHIBIT A**</span>

**SUSPECT INFORMATION** *(Complete a Separate Form FPS-10 for Each Suspect Involved)*

| Name: | AKA(s): | Sex: ☐ Male ☐ Female |
|---|---|---|

| Height: | Weight: | Age: | Ethnicity: | FBI Number: | Other Information: |
|---|---|---|---|---|---|

**SUSPECTS ACTIONS / THREATS (what were they doing, saying. Under the influence of drugs/ alcholohol, Mental Status, any other inprotant info), ANY VERABL COMMANDS GIVEN AND SUSPECTS RESPONSE TO SAME ARTICULATE ALL GRAHAM FACTORS and FACTS**

**SUSPECTS DISCRIPTION; (clothing, attire)**

**Prior Arrests** *(Show Date, Offense and Disposition)*:

**SUSPECT WEAPON OR OTHER USE OF FORCE INFORMATION** *(Check all that apply)*

Weapons possessed/ used by Suspect at time of arrest

☐ Handgun      ☒ Empty hands      ☐ Other (Describe)
☐ Rifle/Carbine      ☐ Vehicle
☐ Submachine Gun      ☐ Animal
☐ Knife      ☐ Chemical Device
☐ Other Cutting Instrument      ☐ Explosive Device
☐ Blunt Instrument

WHAT Was suspect doing with any above listed weapons – ARTUCULATE ACTIONS

**SUSPECTS INJURIES –**

☒ Not injured      ☐ Injured, treated      ☐ Hospitalized
☐ Injured, no treatment required      ☐ Injured, refused treatment      ☐ Fatal

**LIST NATURE OF SUSPECTS INJURIES:**

| Decontamination Required YES ☐ NO ☒ | If decontaminated, describe details (how, when, where, by whom) |
|---|---|
| **MEDICALLY TREATED ON SCENE** YES ☐ NO ☒ | **If MEDICALLY TREATED ON SCENE (how, when, where, by whom)** |
| **TRANSPORTED TO HOSPITAL** YES ☐ NO ☒ | **If Transported (how, when, where, by whom)** |

**OFFICERS INJURIES/ MEDICAL**

OFFICERS INJURIES

☒ **Not injured**      ☐ **Injured, treated**      ☐ **Hospitalized**
☐ **Injured, no treatment required**      ☐ **Injured, refused treatment**      ☐ **Fatal**

**LIST NATURE OF LEOs INJURIES:**

| Decontamination Required YES ☒ NO ☐ | If decontaminated, describe details (how, when, where, by whom) Decontamination was conducted by Los Angeles Fire Department in the loading dock designated decon area at approxamtily 1400 hours on 17 July 2025 |
|---|---|



EXHIBIT A

9

| MEDICALLY TREATED ON SCENE<br>YES ☐ NO ☒ | If MEDICALLY TREATED ON SCENE (how, when, where, by whom) |
|---|---|
| TRANSPORTED TO HOSPITAL<br>YES ☐ NO ☒ | If Transported (how, when, where, by whom) |

## FINAL OUTCOME OF INCIDENT and ADDITIONAL INFORMATION

**End Result**

- ☒ Suspect arrested by FPS
- ☐ Suspect Arrested by other agency
- ☐ Suspect hospitalized/pending further treatment
- ☐ Suspect fatality
- ☐ Animal destroyed
- ☐ Property damaged (description in comments)
- ☐ Other

Officer's Misc Information

- ☐ Site walk through ☐ Performed ☐ Offered ☐ Not req'd
- ☐ 72 Hour post incident admin leave received ☐ Not req'd

**SUSPECT CHARGES – List any an all charges of suspect, (by who,/LE Agencey)**

41 CFR 102-74.380 (Violating Preservation of Property) (b)
willfully destroying or damaging property
18 USC 111 Assaulting, Resisting or impeding certain officers or
employees.

## EVIDENCE COLLECTED AT SCENE

Any evidence collected at scene and what was down with it?

- ☐ Weapons
- ☐ spent casing
- ☐ taser cartridges / probes
- ☐ anything else ?

List all important information about any collected and
disposition of same – stored in evidence, turned in to, ect

**ADDITIONAL COMMNETS**

Subject spat on Inspector Cheung while being escorted to Ryobal Federal
Building FPS holding cell (B199)

# EXHIBIT A

10

**U.S. Department of Homeland Security**
Federal Protective Service **FPS Form 10**

---

## Officers Use of Force Report

### INCIDENT IDENTIFICATION INFORMATION

| FPS Incident Number: | OIG Incident File Number: | Additional FPS-10's / Same Incident: | Investigating Official: |
|---|---|---|---|
| | | ☒ Yes    ☐ No | |

| Program: | REGION | Office / Station: | Supervisor's Name/Title: | Supervisor's Telephone/e-mail: |
|---|---|---|---|---|
| FPS | 9 | Los Angeles, CA | AC John Rodriguez | 619-405-5059 |

| Time of Incident: | Date of Incident: | Day of Incident: |
|---|---|---|
| 1312 hours | 07/17/2025 | ☐ S   M   ☐ T   ☐ W   ☒ T   ☐ F   ☐ S |

| Number of Suspects: | Number of Involved FPS Officers: | Number of Officer Witnesses: | Number of Civilian Witnesses: |
|---|---|---|---|
| 2 | 15 | Approx. 15 | Unknown |

**Location/Address of Occurrence** *(Include City, County, State and ZIP Code)*, **or Describe Distance from Permanent Reference Points:**

255 E Temple Street, Los Angeles, CA 90012

### INVOLVED OFFICER INFORMATION
*(Complete a Separate Form FPS-10 for Each Officer Involved)*

| Name (LAST, First MI): | Title: | Telephone: | Duty e-mail address: |
|---|---|---|---|
| CLANOR, CHRISTOPHER | Inspector | 619-322-6069 | Christopher.p.clanor @fps.dhs.gov |

| Sex: | | Hand Usage: | | Height: | Weight: | Age: |
|---|---|---|---|---|---|---|
| ☒ Male | ☐ Female | ☐ Right-handed   ☒ Left-handed | | 68" | 225 | 47 |

| Duty Status: | If other agency in joint operation with FPS, list agency: | | |
|---|---|---|---|
| ☒ On Duty   ☐ Off Duty | Federal: | State: | Local: |

**Operational Activity** *(Check all that apply)*:

☐ Patrol
☐ Surveillance
☐ Interviewing

☐ Executing Search Warrant
☐ Executing Criminal Arrest Warrant
☐ Executing Immigration Arrest Warrant
☐ Arrest Without Warrant

☒ Handcuffing
☐ Transporting
☐ Searching Place
☐ Searching Person

Other *(Explain)*:

| Distance from suspect at the time force was employed: | Officer Attire |
|---|---|
| ■ 1 – 14 feet<br>15 – 30 feet<br>31 – 50 feet<br>Over 50 feet | ☒ Uniform<br>☐ Plain Clothes with markings (raid jacket, body armor or similar)<br>☐ Plain Clothes (no visible markings) |

### FORCE USED BY OFFICER

**Level and Type of Force Used by Officer**

☐ Deadly   ☒ Intermediate   Intermediate Weapon

| Officer Injuries | Device Used by Officer | |
|---|---|---|
| ☒ Not Injured<br>☐ Injured, no treatment required<br>☐ Injured, treated<br>☐ Injured, refused treatment<br>☐ Hospitalized<br>☐ Fatal | ☐ Handgun<br>☐ Rifle/Sub-gun<br>☐ Shotgun<br>☐ Baton<br>☐ ECD | ☐ Chemical Spray<br>Chemical Canister/Munitions<br>☐ Impact Munitions<br>☐ Empty Hand<br>☐ Other (describe) |

**Brief Description of Incident (Memorandums, Reports of Investigation, Form 3155 Offense/Incident reports or similar may be attached)**

**See next page:**

**EXHIBIT A**

11

On July 17, 2025, I, Inspector Christopher Clanor #918925, Federal Protective Service (FPS) Law Enforcement Specialist (LES) Inspector while in uniform and clearly identifiable as a federal law enforcement officer, per 40 USC 1315 and on duty. On this date at about 1312 hours, I was assigned to OPERATION SKIP JACK.

On a clear, sunny day with moderate vehicular traffic on North Alameda Street and approximately 30 protesters present, I observed a 6-foot-tall Hispanic male adult, later identified as NICK ELIAS GUTIERREZ, born on 03-30-2005, with CDL W2050638, who appeared to weigh around 230 pounds. He was seen grabbing both of Inspector Mutuc's wrists in the middle of Alameda Street, directly across from 255 E Temple Street. GUTIERREZ utilized his left hand to seize Inspector Mutuc's right wrist while his right-hand grasped Inspector Mutuc's left wrist. It appeared that Inspector Mutuc was attempting to free himself from GUTIERREZ's hold; however, GUTIERREZ was overpowering him. Inspector Mutuc stands at approximately 5 feet 5 inches tall. After witnessing Inspector Mutuc being overpowered by GUTIERREZ, I approached GUTIERREZ from his left side, as he was facing Inspector Mutuc and physically restraining both of Inspector Mutuc's hands. I executed a leg sweep on GUTIERREZ with the intention of bringing him to the ground and handcuffing him. Another Inspector positioned to my right assisted in subduing GUTIERREZ to the ground. After GUTIERREZ was brought to the ground by Inspector Mutuc, Inspector Stubbs, and myself, he was lying on his back and began to kick at me and the other Inspectors with his legs. To stop him from kicking, I grabbed GUTIERREZ's right leg. He then attempted to roll onto his left side towards his stomach in an effort to stand up. However, I was positioned behind him, and I maneuvered my right arm over GUTIERREZ's right arm, bringing my right hand back underneath his armpit to secure his right arm behind his back, preventing him from getting up. Despite this, he managed to overpower me and rolled forward, causing me to roll over GUTIERREZ's head since my right arm was trapped beneath his right armpit. As he rolled forward, I fell over his head and landed on my back with GUTIERREZ partially on my upper torso. The Inspectors were able to pull GUTIERREZ off me, allowing me to roll onto my left side and rise to my knees. I then placed my hands on GUTIERREZ's head, applying pressure to keep him down; however, he was quite strong and occasionally managed to turn and lift his head off the ground. At one point, I grasped his shirt collar and hair to gain control of his head and prevent him from getting up. The Inspectors faced challenges in handcuffing GUTIERREZ behind his back due to his resistance and strength. He consistently refused to allow the Inspectors to place his hands behind him, forcing them to remain close to his body. During the struggle, I noticed a holster on the ground containing a pistol, which I immediately recognized as an FPS pistol. I quickly retrieved the holster with the pistol and handed it to another Inspector. Approximately four Inspectors were involved in the effort to handcuff GUTIERREZ, who was not complying with verbal commands to remain on the ground. Once Inspector Mutuc successfully handcuffed GUTIERREZ, I subsequently placed my hands on GUTIERREZ's right shoulder blade.

**FPS Form 10**

**INVOLVED OFFICER FIREARM INFORMATION**          *(List Additional Firearms Used by Same Officer on Supplement)*

| Manufacturer: | Model Name / Number: | Type *(Pistol, Rifle, etc.)*: | Rounds Fired: | Caliber: | Barrel Length: |
|---|---|---|---|---|---|
| | | n/a | | n/a | N/a |

| Bullet Type: | Bullet Weight: | Firearm Ownership: | | Additional Firearms Used: | |
|---|---|---|---|---|---|
| | n/a | FPS-issued ☐ Personal | | ☒ None ☐ See Supplement | |

**SUSPECT INFORMATION**          *(Complete a Separate Form FPS-10 for Each Suspect Involved)*

| Name: | | | AKA(s): | | Sex: ☐ Male ☐ Female |
|---|---|---|---|---|---|
| Height: | Weight: | Age: | Ethnicity: | FBI Number: | Other Information: |
| | | | | | |
| Prior Arrests *(Show Date, Offense and Disposition)*: | | | | | |
| | | | | | |

**SUSPECT WEAPON OR OTHER USE OF FORCE INFORMATION**          *(Check all that apply)*

| Weapons possessed/ used by Suspect at time of arrest |
|---|

12



<span style="color:red">EXHIBIT A</span>

☐ Handgun          ☐ Empty hands          ☐ Other (Describe)
☐ Rifle/Carbine    ☐ Vehicle
☐ Submachine Gun   ☐ Animal
☐ Knife            ☐ Chemical Device
☐ Other Cutting Instrument  ☐ Explosive Device
☐ Blunt Instrument

**Suspect's injuries**

☒ Not injured                    ☐ Injured, treated           ☐ Hospitalized
☐ Injured, no treatment required ☐ Injured, refused treatment ☐ Fatal

| Decontamination Required | If decontaminated, describe details (how, when, where, by whom) |
|---|---|
| YES ☐  NO ☒ | |

## FINAL OUTCOME OF INCIDENT and ADDITIONAL INFORMATION

| End Result | Officer's Misc Information |
|---|---|
| ☒ Suspect arrested by FPS | ☐ Site walk through ☐ Performed ☐ Offered ☐ Not req'd |
| ☐ Suspect Arrested by other agency | ☐ 72 Hour post incident admin leave received ☐ Not req'd |
| ☐ Suspect hospitalized/pending further treatment | |
| ☐ Suspect fatality | |
| ☐ Animal destroyed | |
| ☐ Property damaged (description in comments) | |
| ☒ Other | |

**Additional Comments**



EXHIBIT A

13

**U.S. Department of Homeland Security**
Federal Protective Service **FPS Form 10**

<div align="right">

**Officers Use of Force Report**

</div>

## INCIDENT IDENTIFICATION INFORMATION

| FPS Incident Number: | OIG Incident File Number: | Additional FPS-10's / Same Incident: | Investigating Official: |
|---|---|---|---|
| 25026699D | | ☒ Yes ☐ No | |

| Program: | REGION | Office / Station: | Supervisor's Name/Title: | Supervisor's Telephone/e-mail: |
|---|---|---|---|---|
| | 9 | Los Angeles, CA | AC DICK, Daniel | 219-999-1415 / |

| Time of Incident: | Date of Incident: | Day of Incident: |
|---|---|---|
| 1:12 PM | 07/17/2025 | ☐ S ☐ M ☐ T ☐ W ☒ T ☐ F ☐ S |

**Weather and / or Environment conditions:** | **Lighting conditions:**

| Number of Suspects: | Number of Involved FPS Officers: | Number of Officer Witnesses: | Number of Civilian Witnesses: |
|---|---|---|---|
| 2 | 5 | | |

**Location/Address of Occurrence** *(Include City, County, State and ZIP Code)*, **or Describe Distance from Permanent Reference Points:**

## INVOLVED OFFICER INFORMATION           *(Complete a Separate Form FPS-10 for Each Officer Involved)*

| Name (LAST, First MI): | Title: | Telephone: | Duty e-mail address: |
|---|---|---|---|
| MURBERG, Eric | Inspector | 210-793-0046 | Eric.Murberg@fps. |

| Sex: | | Hand Usage: | Height: | Weight: | Age: |
|---|---|---|---|---|---|
| ☒ Male | ☐ Female | ☒ Right-handed ☐ Left-handed | 73" | 265 | 48 |

| Duty Status: | If other agency in joint operation with FPS, list agency: | | |
|---|---|---|---|
| ☒ On Duty ☐ Off Duty | | State: | Local: |

**Operational Activity** *(Check all that apply)*:

☒ Patrol   ☐ Executing Search Warrant   ☒ Handcuffing   ☐ Other *(Explain)*:
☐ Surveillance   ☐ Executing Criminal Arrest Warrant   ☐ Transporting
☐ Interviewing   ☐ Executing Immigration Arrest Warrant   ☐ Searching Place
☐ Arrest Without Warrant   ☐ Searching Person

| Distance from suspect at the time force was employed: | Officer Attire |
|---|---|
| ☒ 1 – 14 feet<br>☐ 15 – 30 feet<br>☐ 31 – 50 feet<br>☐ Over 50 feet | ☒ Uniform<br>☐ Plain Clothes with markings (raid jacket, body armor or similar)<br>☐ Plain Clothes (no visible markings) |

## ON SCENE SUPERVISOR INFORMATION

| Name (LAST, First MI): | Title: | Telephone: | Duty e-mail address: |
|---|---|---|---|
| DICK, Daniel | Area Commander | 219-999-1415 | |

## FORCE USED BY OFFICER

**Level and Type of Force Used by Officer**

☐ Deadly   ☐ Intermediate   ☒ Intermediate Weapon

| Officer Injuries | Device Used by Officer | |
|---|---|---|
| ☒ Not Injured<br>☐ Injured, no treatment required<br>☐ Injured, treated<br>☐ Injured, refused treatment<br>☐ Hospitalized<br>☐ Fatal | ☐ Handgun<br>☐ Rifle/Sub-gun<br>☐ Shotgun<br>☐ Baton<br>☒ CEW/ Taser | ☒ Chemical Spray<br>☐ Chemical Canister/Munitions<br>☐ Impact Munitions<br>☐ Empty Hand<br>☐ Other (describe) |

**Brief Description of Incident (Memorandums, Reports of Investigation, Form 3155 Offense/Incident reports or similar may be attached)**



EXHIBIT A

14

**FPS Form 10**

**INVOLVED OFFICER FIREARM INFORMATION**                    *(List Additional Firearms Used by Same Officer on Supplement)*

| Manufacturer: | Model Name / Number/ SERIAL NUMBER: | Type *(Pistol, Rifle, etc.)*: | Rounds Fired: | Caliber: | Barrel Length: |
|---|---|---|---|---|---|
| N/A | N/A | N/A | | | |
| Bullet Type: | Bullet Weight: | Firearm Ownership: | | Additional Firearms Used: List all information for any additional Firearms | |
| | | ☐ FPS-issued ☐ Personal | | ☐ None ☐ See Supplement | |

**INVOLVED OFFICER CEW/ TASER  INFORMATION**

| Manufacturer: | Model Name / Number/ SERIAL NUMBER: | CARTRIDGE SERIAL NUMBER (S) | Cartride TYPE , | Number of Cartidges Fired | Number of Cycles applied: |
|---|---|---|---|---|---|
| Axon | X120055CD | N/A | N/A | N/A | 2 |
| | | Firearm Ownership: | | Additional CEWS Used: List all information for any additional Firearms | |
| | | ☒ FPS-issued ☐ Personal | | ☒ None ☐ See Supplement | |
| WAS NMI ACHIEVED | NEED FOR ADDITIONAL APPLICATIONS | DID TASEWR RESPOND SATIFACCTORY? | IF UNSUCESSFUL, WAS DRIVE STUN USED?, | Approximate distance between probes | Did Porbes penetrate subjects skin |
| ☐ YES ☒ NO ☐ DISPLAY ONLY | ☒ YES ☐ NO | ☒ YES ☐ NO | ☒ YES ☐ NO | N/A | ☐ YES ☒ NO |
| Were PROBES REMOVED ON SCENE | | Firearm Ownership: | | Additional CEWS Used: List all information for any additional Firearms | |
| ☐ YES ☒ NO BY WHO? | | ☒ FPS-issued ☐ Personal | | ☒ None ☐ See Supplement | |

**APPLICATION AREAS:**
**(Place "X's" where probes hit suspect AND *"O's" where stunned*)**



15

# EXHIBIT A

**SUSPECT INFORMATION** *(Complete a Separate Form FPS-10 for Each Suspect Involved)*

| Name: GUTIERREZ, Nick Elias | | AKA(s): Unknown | | Sex: ☒ Male ☐ Female | |
|---|---|---|---|---|---|
| Height: 71" | Weight: 225 | Age: 20 | Ethnicity: U | FBI Number: | Other Information: |

**SUSPECTS ACTIONS / THREATS (what were they doing, saying. Under the influence of drugs/ alcholohol, Mental Status, any other inprotant info), ANY VERABL COMMANDS GIVEN AND SUSPECTS RESPONSE TO SAME ARTICULATE ALL GRAHAM FACTORS and FACTS**

**SUBECT was punching, kicking, trying to wrestle away from and spitting on fellow inspectors in the middle of a active four lane street in downtown Los Angeles.**

**SUSPECTS DISCRIPTION; (clothing, attire)**

White shirt, camouflage pants

**Prior Arrests** *(Show Date, Offense and Disposition)*:

Unknown

**SUSPECT WEAPON OR OTHER USE OF FORCE INFORMATION** *(Check all that apply)*

Weapons possessed/ used by Suspect at time of arrest

☐ Handgun        ☒ Empty hands        ☒ Other (Describe)Feet and Spit
☐ Rifle/Carbine    ☐ Vehicle
☐ Submachine Gun   ☐ Animal
☐ Knife          ☐ Chemical Device
☐ Other Cutting Instrument   ☐ Explosive Device
☐ Blunt Instrument

WHAT Was suspect doing with any above listed weapons – ARTUCULATE ACTIONS
Punching, kicking and spitting on fellow inspectors

**SUSPECTS INJURIES –**

☐ Not injured        ☒ Injured, treated        ☐ Hospitalized
☐ Injured, no treatment required    ☐ Injured, refused treatment    ☐ Fatal

**LIST NATURE OF SUSPECTS INJURIES:**

| Decontamination Required YES ☒ NO ☐ | If decontaminated, describe details (how, when, where, by whom) LAFD Paramedics decontaminated SUBJECT upon arrival |
|---|---|
| **MEDICALLY TREATED ON SCENE** YES ☐ NO ☒ | **If MEDICALLY TREATED ON SCENE (how, when, where, by whom)** **SUBJECT transported to hospital with minor injuries** |
| **TRANSPORTED TO HOSPITAL** YES ☒ NO ☐ | **If Transported (how, when, where, by whom)** **SUBJECT transported to hospital with minor injuries** |

16



EXHIBIT A

**OFFICERS INJURIES/ MEDICAL**

| OFFICERS INJURIES | | |
|---|---|---|
| ☐ Not injured<br>☐ Injured, no treatment required | ☒ Injured, treated<br>☐ Injured, refused treatment | ☐ Hospitalized<br>☐ Fatal |

**LIST NATURE OF LEOs INJURIES:**

| Decontamination Required<br>YES ☐ NO ☒ | If decontaminated, describe details (how, when, where, by whom) |
|---|---|
| **MEDICALLY TREATED ON SCENE**<br>YES ☐ NO ☒ | If MEDICALLY TREATED ON SCENE (how, when, where, by whom) |
| **TRANSPORTED TO HOSPITAL**<br>YES ☐ NO ☒ | If Transported (how, when, where, by whom) |

**FINAL OUTCOME OF INCIDENT and ADDITIONAL INFORMATION**

| End Result | Officer's Misc Information |
|---|---|
| ☒ Suspect arrested by FPS<br>☐ Suspect Arrested by other agency<br>☐ Suspect hospitalized/pending further treatment<br>☐ Suspect fatality<br>☐ Animal destroyed<br>☐ Property damaged (description in comments)<br>☐ Other | ☐ Site walk through ☐Performed☐ Offered ☒ Not req'd<br>☐ 72 Hour post incident admin leave received ☒ Not req'd |

| SUSPECT CHARGES – List any an all charges of suspect, (by who,/LE Agencey) |
|---|
| 18 USC 111, Assaulting, Resisting or Impeding Federal Officer |

**EVIDENCE COLLECTED AT SCENE**

| Any evidence collected at scene and what was down with it? |
|---|
| ☐ Weapons<br>☐ spent casing<br>☐ taser cartridges / probes<br>☐ anything else ?<br><br>List all important information about any collected and disposition of same – stored in evidence, turned in to, ect |

| ADDITIONAL COMMNETS |
|---|
| At approximately 1:12 PM, On Thursday July 17th, 2025, I (Inspector Eric A. Murberg) while on duty as a uniformed Inspector for the the Federal Protective Service (FPS) stationed just outside the parking garage area of Los Angeles Federal Courthouse located at 255 East Temple Street, Los Angeles, CA, I observed multiple FPS personnel making contact with demonstrators in the street adjacent to the facility.  I then made my way into the street and observed Inspector MUTUC and Inspector CLANOR struggling to take GUTIERREZ into custody.  All three fell to the ground and GUTIERREZ landed on his back and began kicking, punching and spitting at Inspectors MUTUC and CLANOR.  I then made my way over to the Inspector MUTUC, Inspector CLANOR and GUTEIRREZ and told GUTIERREZ to get on his stomach.  I then unholstered my issued OC spray, deployed a 1 to 2 second stream of OC spray to GUTIERREZ' face.  I then backed away, observed GUTIERREZ and did not see a response to my deployed OC spray.  I then made my way around to GUTIERREZ waist area and told GUTIERREZ to get onto his stomach.  Both Inspectors MUTUC and CLANOR continued to struggle with GUTIERREZ who continued to kick, punch and spit while laying on his right side.  I then unholstered my taser, removed the cartridge and applied a drive stun of 2 to 3 seconds to GUTIERREZ' left hip area.  I did not observe any reaction to the drive stun by GUTIERREZ and Inspectors |

# EXHIBIT A

17

MUTUC and CLANOR continued to struggle to put GUTIERREZ in hand cuffs who was still on his right side.  I then again deployed another 2 to 3 second drive stun to GUTIERREZ left hip area again this time getting a response from GUTIERREZ who then rolled over onto his stomach and Inspector MUTUC was able to mount GUTIERREZ' hip area and apply hand cuffs to GUTIERREZ.  I then made my way back to my feet and began to protect Inspector MUTUC and CLANOR from other demonstrators who had surrounded us as Inpsector MUTUC and CLANOR were still on the ground struggling to bring GUTIERREZ to his feet.

18

EXHIBIT A

**U.S. Department of Homeland Security**
Federal Protective Service **FPS Form 10**

## Officers Use of Force Report

### INCIDENT IDENTIFICATION INFORMATION

| FPS Incident Number: | OIG Incident File Number: | Additional FPS-10's / Same Incident: | Investigating Official: |
|---|---|---|---|
| 25026699D | | ☒ Yes ☐ No | |

| Program: | REGION | Office / Station: | Supervisor's Name/Title: | Supervisor's Telephone/e-mail: |
|---|---|---|---|---|
| FPS | 9 | Metro LA | AC Daniel Dick | 213-999-1415 |

| Time of Incident: | Date of Incident: | Day of Incident: |
|---|---|---|
| 1312 hours | 7/17/2025 | ☐ S ☐ M ☐ T ☐ W ☐ T ☒ F ☐ S |

| Number of Suspects: | Number of Involved FPS Officers: | Number of Officer Witnesses: | Number of Civilian Witnesses: |
|---|---|---|---|
| 2 | 20 | 20 Federal Officers/Agents | Unknown |

| Location/Address of Occurrence *(Include City, County, State and ZIP Code)*, or Describe Distance from Permanent Reference Points: |
|---|
| 255 E. Temple St., Los Angeles, CA, 90012/ Employee Entrance on Alameda Street. |

### INVOLVED OFFICER INFORMATION          *(Complete a Separate Form FPS-10 for Each Officer Involved)*

| Name (LAST, First MI): | Title: | Telephone: | Duty e-mail address: |
|---|---|---|---|
| Mutuc, Benjamin | Inspector | 213-523-1605 | Benjamin.g.mutucj |

| Sex: | Hand Usage: | Height: | Weight: | Age: |
|---|---|---|---|---|
| ☒ Male ☐ Female | ☒ Right-handed ☐ Left-handed | 5'5 | 160 | 56 |

| Duty Status: | If other agency in joint operation with FPS, list agency: |
|---|---|
| ☒ On Duty ☐ Off Duty | Federal:          State:          Local: |

**Operational Activity** *(Check all that apply)*:

☐ Patrol   ☐ Executing Search Warrant   ☐ Handcuffing   ☒ Other *(Explain)*:
☐ Surveillance   ☐ Executing Criminal Arrest Warrant   ☐ Transporting
☐ Interviewing   ☐ Executing Immigration Arrest Warrant   ☐ Searching Place   Civil Disobedience/Riot
☐ Arrest Without Warrant   ☐ Searching Person

| Distance from suspect at the time force was employed: | Officer Attire |
|---|---|
| ☐ 1 – 14 feet<br>☐ 15 – 30 feet<br>☐ 31 – 50 feet<br>☐ Over 50 feet | ☒ Uniform<br>☐ Plain Clothes with markings (raid jacket, body armor or similar)<br>☐ Plain Clothes (no visible markings) |

### FORCE USED BY OFFICER

**Level and Type of Force Used by Officer**

☐ Deadly   ☒ Intermediate   ☐ Intermediate Weapon

| Officer Injuries | Device Used by Officer | |
|---|---|---|
| ☐ Not Injured | ☐ Handgun | ☒ Chemical Spray |
| ☐ Injured, no treatment required | ☐ Rifle/Sub-gun | ☐ Chemical Canister/Munitions |
| ☒ Injured, treated | ☐ Shotgun | ☐ Impact Munitions |
| ☐ Injured, refused treatment | ☐ Baton | ☒ Empty Hand |
| ☒ Hospitalized | ☒ ECD | ☐ Other (describe) |
| ☐ Fatal | | |

**Brief Description of Incident (Memorandums, Reports of Investigation, Form 3155 Offense/Incident reports or similar may be attached)**



EXHIBIT A

19

While providing security, an unknown Hispanic female who was grabbing and pulling onto ESCOBARs backpack to avoid his arrest. I attempted to loosen her hold by using my hands in a downward motion but was unsuccessful. I then took her arm that she was using to hold onto ESCOBAR to separate her from the arrest FPS team. As her hold was separated, she dropped her weight, and I let go of her arm. However, an unknown black female wearing a yellow shirt with pink pants came towards me and pushed me on my chest.

At this moment, I observed a MH about 6 feet tall, wearing a black polo, white shirt, gray camouflage pants walking aggressively towards me. He placed down a bull horn that he was holding and ran quickly towards me with a clenched fist and yelling that he was going to, "beat your ass." The SUBJECT was later identified as NICK ELIAS GUTIERREZ, DOB: 03-30-2005, CDL W2050638.

As GUTIERREZ walked fast purposely towards me, I observed him cocking his clenched fist as if he was going to punch me. I extended my left hand to protect myself from being assaulted, as he grabbed a hold of my uniform. At this time, I grabbed GUTIERREZ shirt with my left hand to keep my balance and was yelling at him to stop.

GUTIERREZ did not comply to my commands and continued to push me and yell in my face stating that he was going to, "Beat your ass." As GUTIERREZ and I wrestled by holding to each other's clothing, I felt I was overpowered by his size and weight. I attempted to push him back, however, due to his size, I was unable to have a positive control of GUTIERREZ. As I struggled to control GUTIERREZ, I observed Inspector CHRIS CLANOR #9P1525 and RAY STUBBS #3P1575 come to my right side to aid me.

Inspector CLANOR grabbed onto GUTIERREZ and used a leg sweep to get GUTIERREZ off balance while Inspector STUBBS grabbed onto GUTIERREZ back side to pull him down onto the asphalt. As GUTIERREZ continued to resist by fighting and not cooperating with commands, Inspectors CLANOR, STUBBS and I fell to the ground with GUTIERREZ.

While all of this was happening, Alameda Street was very busy with vehicles travelling in both directions and were within feet of the FPS Officers who were on the asphalt, struggling to subdue GUTIERREZ.

FPS officers and I were located on Alameda Street which is a busy six lane asphalt road in the middle of downtown Los Angeles. This is where FPS Officers and I struggled to detain GUTIERREZ. During the struggle with the GUTIERREZ, GUTIERREZ and FPS Officers fell on the asphalt street causing significant injury to Inspector Stubbs left hand. I, myself, fell to my knees causing injury (photos attached).

It took five FPS Inspectors to subdue GUTIERREZ on the asphalt in the middle of the busy Alameda Street where multiple vehicles were present and moving within feet of the arresting officers and demonstrators who were interfering with the arrests.

While on the asphalt with GUTIERREZ, he was eventually rolled onto his back, but GUTIERREZ managed to kick me. GUTIERREZ kicked me on my chest and face, and I fell backwards. I observed GUTIERREZ overpower Inspector CLANOR at one point, GUTIERREZ was on top of him laying on his chest. While GUTIERREZ was on Inspector CLANORs chest, Inspector STUBBS and I pulled GUTIERREZ off of Inspector CLANOR by the shoulders, Inspector STUBBS attempted to break his fall with his left hand and dislocated his left ring finger. At that time, Inspector STUBBS disengaged from actively arresting GUTIERREZ and went to seek medical attention where US Navy Hospital Mate (HM) 3 ALEXANDER HAY later reset his finger back to its original state.



**FPS Form 10**

**INVOLVED OFFICER FIREARM INFORMATION**   *(List Additional Firearms Used by Same Officer on Supplement)*

| Manufacturer: | Model Name / Number: | Type *(Pistol, Rifle, etc.)*: | Rounds Fired: | Caliber: | Barrel Length: |
|---|---|---|---|---|---|
| Bullet Type: | Bullet Weight: | Firearm Ownership: ☐ FPS-issued ☐ Personal | | Additional Firearms Used: ☐ None ☐ See Supplement | |

**SUSPECT INFORMATION**   *(Complete a Separate Form FPS-10 for Each Suspect Involved)*

| Name: Nick Elias Gutierrez | AKA(s): | Sex: ☒ Male   ☐ Female | | |
|---|---|---|---|---|
| Height: 5'11 | Weight: 225 | Age: 21 | Ethnicity: Hispanic | FBI Number: | Other Information: |

Prior Arrests *(Show Date, Offense and Disposition)*:

Vehicle Code 23152 (F) DUI ANY DRUG

**SUSPECT WEAPON OR OTHER USE OF FORCE INFORMATION**   *(Check all that apply)*

**Weapons possessed/ used by Suspect at time of arrest**

☐ Handgun
☐ Rifle/Carbine
☐ Submachine Gun
☐ Knife
☐ Other Cutting Instrument
☐ Blunt Instrument

☐ Empty hands
☐ Vehicle
☐ Animal
☐ Chemical Device
☐ Explosive Device

☒ Other (Describe)

Glass bottles, cans, water bottles, spotlights and shields

**Suspect's injuries**

☐ Not injured
☐ Injured, no treatment required

☒ Injured, treated
☐ Injured, refused treatment

☐ Hospitalized
☐ Fatal

| Decontamination Required YES ☒ NO ☐ | If decontaminated, describe details (how, when, where, by whom) |
|---|---|

**FINAL OUTCOME OF INCIDENT and ADDITIONAL INFORMATION**

| End Result Charged 18 usc 111 Assault on Federal Officer | Officer's Misc Information |
|---|---|

**Additional Comments**

☒ Suspect arrested by FPS
☐ Suspect Arrested by other agency
☐ Suspect hospitalized/pending further treatment
☐ Suspect fatality
☐ Animal destroyed
☐ Property damaged (description in comments)
☐ Other

☐ Site walk through ☐ Performed ☐ Offered ☐ Not req'd
☐ 72 Hour post incident admin leave received ☐ Not req'd

21



EXHIBIT A

During this violent struggle to arrest GUTIERREZ, he was rolled over to his stomach for FPS to place handcuffs on him. While GUTIERREZ was actively resisting, my pistol holster broke off my duty belt; the weapon was secured by FPS immediately. GUTIERREZ continued to actively resist by flailing and pulling both his arms to avoid being handcuffed.

Inspector NATHAN AMARAL #9P1678 also assisted and grabbed onto GUTIERREZ right arm, and I was able to place handcuffs onto his right wrist. However, GUTIERREZ continued to resist, and Inspector ERIC NURBERG #7P775 who also assisted deployed his issued OC spray to GUTIERREZ face with no avail while Area Commander (AC) John Rodriguez #9V81 held onto GUTIERREZ legs to avoid FPS being kicked again. Due to not receiving a response from the use of NURBERG's OC Spray, He deployed his issued taser by Drive Stunning GUTIERREZ on his back while he actively resisted.

FPS eventually controlled GUTIERREZ; however, it took five FPS personnel to control him. Both GUTIERREZ and ESCOBAR were escorted by AC Rodriguez and Inspector John De Silva in the Roybal Federal Building Loading dock where he was treated and decontaminated for being exposed to OC spray.  GUTIERREZ was decontaminated by RODRIGUEZ and De Silva by applying water to the bridge of his nose to flush out both eyes. GUTIERREZ was provided medical care for his OC exposure by Los Angeles Fire Department (LAFD) and was escorted to and treated in the University of Southern California (USC) medical center.  GUTIERREZ was treated and released for booking.

22



EXHIBIT A

EXHIBIT A

23

U.S. Department of Homeland Security
Federal Protective Service **FPS Form 10**

## Officers Use of Force Report

### INCIDENT IDENTIFICATION INFORMATION

| FPS Incident Number: | OIG Incident File Number: | Additional FPS-10's / Same Incident: | Investigating Official: |
|---|---|---|---|
| 25026699D | | ☒ Yes  ☐ No | |

| Program: | REGION | Office / Station: | Supervisor's Name/Title: | Supervisor's Telephone/e-mail: |
|---|---|---|---|---|
| FPS | 9 | Los Angeles | AC Rodriguez, John | 619-405-5059 |

| Time of Incident: | Date of Incident: | Day of Incident: |
|---|---|---|
| 1315 Hours | 07/17/2024 | ☐ S  ☐ M  ☐ T  ☐ W  ☒ T  ☐ F  ☐ S |

**Weather and / or Environment conditions: Sunny**   **Lighting conditions: Daytime**

| Number of Suspects: | Number of Involved FPS Officers: | Number of Officer Witnesses: | Number of Civilian Witnesses: |
|---|---|---|---|
| 1 | 4 | 15 Federal Inspectors | Unknown |

| Location/Address of Occurrence *(Include City, County, State and ZIP Code)*, or Describe Distance from Permanent Reference Points: |
|---|
| 255 E. Temple St., Los Angeles, CA, 90012 |

### INVOLVED OFFICER INFORMATION             *(Complete a Separate Form FPS-10 for Each Officer Involved)*

| Name (LAST, First MI): | Title: | Telephone: | Duty e-mail address: |
|---|---|---|---|
| Riordan, Keith | Inspector | 480-637-1482 | keith.r.riordan@fps |

| Sex: | | Hand Usage: | Height: | Weight: | Age: |
|---|---|---|---|---|---|
| ☒ Male | ☐ Female | ☒ Right-handed  ☐ Left- handed | 6'2" | 215 | 42 |

| Duty Status: | If other agency in joint operation with FPS, list agency: | | |
|---|---|---|---|
| ☒ On Duty  ☐ Off Duty | | State: | Local: |

**Operational Activity** *(Check all that apply)*:

☐ Patrol          ☐ Executing Search Warrant              ☒ Handcuffing          ☐ Other *(Explain)*:
☐ Surveillance    ☐ Executing Criminal Arrest Warrant     ☐ Transporting
☐ Interviewing    ☐ Executing Immigration Arrest Warrant  ☐ Searching Place
                  ☒ Arrest Without Warrant                ☐ Searching Person

| Distance from suspect at the time force was employed: | Officer Attire |
|---|---|
| ☒ 1 – 14 feet<br>☐ 15 – 30 feet<br>☐ 31 – 50 feet<br>☐ Over 50 feet | ☒ Uniform<br>☐ Plain Clothes with markings (raid jacket, body armor or similar)<br>☐ Plain Clothes (no visible markings) |

### ON SCENE SUPERVISOR INFORMATION

| Name (LAST, First MI): | Title: | Telephone: | Duty e-mail address: |
|---|---|---|---|
| Dick, Daniel | Area Commander | 213-999-4145 | Daniel.m.dick@fps |

### FORCE USED BY OFFICER

| Level and Type of Force Used by Officer |
|---|
| ☐ Deadly  ☐ Intermediate  ☒ Empty hand |

| Officer Injuries | Device Used by Officer | |
|---|---|---|
| ☒ Not Injured<br>☐ Injured, no treatment required<br>☐ Injured, treated<br>☐ Injured, refused treatment<br>☐ Hospitalized<br>☐ Fatal | ☐ Handgun<br>☐ Rifle/Sub-gun<br>☐ Shotgun<br>☐ Baton<br>☐ CEW/ Taser | ☐ Chemical Spray<br>☐ Chemical Canister/Munitions<br>☐ Impact Munitions<br>☒ Empty Hand<br>☐ Other (describe) |

**Brief Description of Incident (Memorandums, Reports of Investigation, Form 3155 Offense/Incident reports or similar may be attached)**

**On Thursday July 17, 2025, at approximately 1315 hours, I, Inspector Riordan, K. (9P1688) along with fellow Federal Protective Service Inspectors attempted to detain SUBJECT ESCOBAR, Erin for vandalizing government property. SUBJECT evaded detainment by running across Alameda Street into a blue canopy. SUBJECT was wearing a helmet and removed it and attempted to hide behind another individual. SUBJECT was grabbed by an**



EXHIBIT A

24

Inspector Cheung while under the canopy. SUBJECT actively resisted detainment by holding on to another protestor as an Inspector was pulling him. SUBJECT was able to evade detainment because they worked in unison to escape from Inspector Cheung custody. The person who assisted SUBJECT get away is described as an unidentified individual approximately 5' 10" 250 lbs. – 300 lbs. wearing a black in color shirt, black in color hat, black in color pants, and black in color sneakers.

The unidentified individual had arms around SUBJECT and was running with him. Fellow Inspectors and I pursued both SUBJECTs. We contacted SUBJECT and attempted to detain, but the unidentified individual impeded by shielding and pulling SUBJECT away. I assisted by separating the unidentified individual from SUBJECT. During the separation, the individual lost balance causing the individual to fall to the ground. I also lost balance causing me to fall with the unidentified individual on the concrete in the middle of Alameda Street. I was able to gain my balance and stay on my feet. The unidentified individual landed on the right hip and braced the fall by placing his right arm on the ground and rolling onto the back. I yelled at the individual to stop impeding. The individual was able to lift himself up from the ground and began walking around the detainment within feet of FPS Inspectors involved. FPS Inspector Castor stood in between the FPS Inspectors detaining SUBJECT and the unidentified individual. I began assisting FPS Inspectors, who were attempting to detain SUBJECT who was actively struggling against them. SUBJECT was laying on the concrete asphalt in the middle of vehicular traffic.

The roadway was multi-laned with active traffic. There was a vehicle within feet behind me. As vehicles were driving passed me protestors were blowing loud whistles and protesting. The protestors were also walking around within proximity. This caused me to look up and around multiple times, for my safety and everyone on scene.

I grabbed SUBJECT's left arm and attempted to place it behind SUBJECT's back. SUBJECT actively resisted detainment by raising the front torso off the ground and twisting and pulling the left arm away. I used my left hand to press SUBJECT's shoulder to the ground and positioned my left knee on the SUBJECT's shoulder area, using the minimal amount of force necessary. SUBJECT resisted by raising the upper torso away causing my left knee to slip off SUBJECT's shoulder towards the ground. I used my left hand to push SUBJECT's left shoulder down and repositioned my knee on SUBJECT's left shoulder area. When SUBJECT's torso was on the ground, I had better leverage to use both of my hands to place SUBJECT's hand behind SUBJET's back. Handcuffs were applied by fellow FPS Inspectors. SUBJECT was assisted to his feet and escorted by Inspectors around vehicles in the roadway to building 255. SUBJECT did not complain of injury.

**FPS Form 10**
**INVOLVED OFFICER FIREARM INFORMATION**          *(List Additional Firearms Used by Same Officer on Supplement)*

| Manufacturer: | Model Name / Number/ SERIAL NUMBER: | Type *(Pistol, Rifle, etc.)*: | Rounds Fired: | Caliber: | Barrel Length: |
|---|---|---|---|---|---|
| | | | | | |
| Bullet Type: | Bullet Weight: | Firearm Ownership: | | Additional Firearms Used: List all information for any additional Firearms | |


EXHIBIT A

25

☐ FPS-issued ☐ Personal    ☐ None ☐ See Supplement

## INVOLVED OFFICER CEW/ TASER INFORMATION

| Manufacturer: | Model Name / Number/ SERIAL NUMBER: | CARTRIDGE SERIAL NUMBER (S) | Cartride TYPE , | Number of Cartidges Fired | Number of Cycles applied: |
|---|---|---|---|---|---|
| | | Firearm Ownership: <br> ☐ FPS-issued ☐ Personal | | Additional CEWS Used: List all information for any additional Firearms <br> ☐ None ☐ See Supplement | |
| **WAS NMI ACHIEVED** <br> ☐ YES ☐ NO <br> ☐ DISPLAY ONLY | **NEED FOR ADDITIONAL APPLICATIONS** <br> ☐ YES ☐ NO | **DID TASEWR RESPOND SATIFACCTORY?** <br> ☐ YES ☐ NO | **IF UNSUCESSFUL, WAS DRIVE STUN USED?,** <br> ☐ YES ☐ NO | **Approximate distance between probes** | **Did Porbes penetrate subjects skin** <br> ☐ YES ☐ NO |
| **Were PROBES REMOVED ON SCENE** <br> ☐ YES ☐ NO <br> BY WHO? | | Firearm Ownership: <br> ☐ FPS-issued ☐ Personal | | Additional CEWS Used: List all information for any additional Firearms <br> ☐ None ☐ See Supplement | |

## APPLICATION AREAS:
**(Place "X's" where probes hit suspect AND *"O's" where stunned*)**

## SUSPECT INFORMATION
*(Complete a Separate Form FPS-10 for Each Suspect Involved)*

| Name: | AKA(s): | Sex: |
|---|---|---|
| Unidentified | | ☒ Male   ☐ Female |

| Height: | Weight: | Age: | Ethnicity: | FBI Number: | Other Information: |
|---|---|---|---|---|---|
| 5'10" | 275 lbs. | | | | |

**SUSPECTS ACTIONS / THREATS (what were they doing, saying.  Under the influence of drugs/ alcholohol, Mental Status, any other inprotant info),  ANY VERABL COMMANDS GIVEN AND SUSPECTS RESPONSE TO SAME ARTICULATE ALL GRAHAM FACTORS and FACTS**

26

# EXHIBIT A

**Actively impeding a detainment by shielding and pulling a SUBJECT away.**

| SUSPECTS DISCRIPTION; (clothing, attire) |
|---|
| Black in color shirt, hat. Pants and sneakers. |

| Prior Arrests *(Show Date, Offense and Disposition)*: |
|---|
| Unknown |

## SUSPECT WEAPON OR OTHER USE OF FORCE INFORMATION          *(Check all that apply)*

**Weapons possessed/ used by Suspect at time of arrest**

☐ Handgun          ☒ Empty hands          ☐ Other (Describe)
☐ Rifle/Carbine          ☐ Vehicle
☐ Submachine Gun          ☐ Animal
☐ Knife          ☐ Chemical Device
☐ Other Cutting Instrument          ☐ Explosive Device
☐ Blunt Instrument

WHAT Was suspect doing with any above listed weapons – ARTUCULATE ACTIONS

**SUSPECTS INJURIES –**

☒ Not injured          ☐ Injured, treated          ☐ Hospitalized
☐ Injured, no treatment required          ☐ Injured, refused treatment          ☐ Fatal

**LIST NATURE OF SUSPECTS INJURIES:**

| Decontamination Required | If decontaminated, describe details (how, when, where, by whom) |
|---|---|
| YES ☐ NO ☒ | |

| MEDICALLY TREATED ON SCENE | If MEDICALLY TREATED ON SCENE (how, when, where, by whom) |
|---|---|
| YES ☐ NO ☒ | N/A |

| TRANSPORTED TO HOSPITAL | If Transported (how, when, where, by whom) |
|---|---|
| YES ☐ NO ☒ | N/A |

## OFFICERS INJURIES/ MEDICAL

**OFFICERS INJURIES**

☒ Not injured          ☐ Injured, treated          ☐ Hospitalized
☐ Injured, no treatment required          ☐ Injured, refused treatment          ☐ Fatal

**LIST NATURE OF LEOs INJURIES:**

| Decontamination Required | If decontaminated, describe details (how, when, where, by whom) |
|---|---|
| YES ☐ NO ☒ | N/A |

| MEDICALLY TREATED ON SCENE | If MEDICALLY TREATED ON SCENE (how, when, where, by whom) |
|---|---|
| YES ☐ NO ☒ | N/A |

| TRANSPORTED TO HOSPITAL | If Transported (how, when, where, by whom) |
|---|---|
| YES ☐ NO ☒ | N/A |

## FINAL OUTCOME OF INCIDENT and ADDITIONAL INFORMATION

| End Result | Officer's Misc Information |
|---|---|



EXHIBIT A

27

☒ Suspect arrested by FPS
☐ Suspect Arrested by other agency
☐ Suspect hospitalized/pending further treatment
☐ Suspect fatality
☐ Animal destroyed
☐ Property damaged (description in comments)
☐ Other

☐ Site walk through ☐Performed☐ Offered ☐ Not req'd
☐ 72 Hour post incident admin leave received ☐ Not req'd

**SUSPECT CHARGES – List any an all charges of suspect, (by who,/LE Agencey)**

41 Code of Federal Regulation 102-74.380 Preservation of Property (B) Willfully damaging property
Title 18 USC 111: Assaulting, Resisting or impeding certain officers or employees.

## EVIDENCE COLLECTED AT SCENE

Any evidence collected at scene and what was down with it?
☐ Weapons
☐ spent casing
☐ taser cartridges / probes
☐ anything else ?

List all important information about any collected and disposition of same – stored in evidence, turned in to, ect

**ADDITIONAL COMMNETS**

EXHIBIT A

28

**U.S. Department of Homeland Security**
Federal Protective Service **FPS Form 10**

<div style="text-align: right">

**Officers Use of Force Report**

</div>

## INCIDENT IDENTIFICATION INFORMATION

| FPS Incident Number: | OIG Incident File Number: | Additional FPS-10's / Same Incident:<br>☒ Yes   ☐ No | Investigating Official: |
|---|---|---|---|

| Program: | REGION | Office / Station: | Supervisor's Name/Title: | Supervisor's Telephone/e-mail: |
|---|---|---|---|---|
| Operation Skip Jack | 9 | 255 E. Temple St., Los Angeles, CA 90012 | Carl Shepard/ District Commander | 6198762560 / Carl.Shepard@fps.dhs.gov |

| Time of Incident: | Date of Incident: | Day of Incident: |
|---|---|---|
| 1000 - 1400 hours APROX | 17 June 2025 | ☐ S  ☐ M  ☐ T  ☐ W  ☒ T  ☐ F  ☐ S |

**Weather and / or Environment conditions:** Clear & Dry   |   **Lighting conditions:** Daylight

| Number of Suspects: | Number of Involved FPS Officers: | Number of Officer Witnesses: | Number of Civilian Witnesses: |
|---|---|---|---|
| Approximately 40 | Approximately 7 | Unknown | Unknown |

**Location/Address of Occurrence** *(Include City, County, State and ZIP Code)***, or Describe Distance from Permanent Reference Points:**

255 E. Temple St Los Angeles, CA

## INVOLVED OFFICER INFORMATION              *(Complete a Separate Form FPS-10 for Each Officer Involved)*

| Name (LAST, First MI): | Title: | Telephone: | Duty e-mail address: |
|---|---|---|---|
| Rodriguez, John J. | Area Commander | 619-405-5059 | john.j.rodriguez@fps.dhs.gov |

| Sex: | Hand Usage: | Height: | Weight: | Age: |
|---|---|---|---|---|
| ☒ Male   ☐ Female | ☒ Right-handed  ☐ Left- handed | 5'9 | 175 lbs. | 55 |

| Duty Status: | If other agency in joint operation with FPS, list agency: | | |
|---|---|---|---|
| ☒ On Duty   ☐ Off Duty | | State: | Local: |

**Operational Activity** *(Check all that apply):*

☐ Patrol   ☐ Executing Search Warrant   ☐ Handcuffing   ☒ Other *(Explain)*:
☐ Surveillance   ☐ Executing Criminal Arrest Warrant   ☐ Transporting
☐ Interviewing   ☐ Executing Immigration Arrest Warrant   ☐ Searching Place   Violent Protest activity
☐ Arrest Without Warrant   ☐ Searching Person

| Distance from suspect at the time force was employed:<br>☒ 1 – 14 feet<br>☐ 15 – 30 feet<br>☐ 31 – 50 feet<br>☐ Over 50 feet | Officer Attire<br>☒ Uniform<br>☐ Plain Clothes with markings (raid jacket, body armor or similar)<br>☐ Plain Clothes (no visible markings) |
|---|---|

**ON SCENE SUPERVISOR INFORMATION**

| Name (LAST, First MI): | Title: | Telephone: | Duty e-mail address: |
|---|---|---|---|
| Daniel Dick | Area commander | 213-999-1415 | daniel.m.dick@fps.dhs.gov |

## FORCE USED BY OFFICER

| Level and Type of Force Used by Officer |
|---|
| ☐ Deadly   ☐ Intermediate   ☐ Intermediate Weapon |

| Officer Injuries | Device Used by Officer |
|---|---|



<div style="text-align: center; color: red; font-size: large">

EXHIBIT A

</div>

29

☒ Not Injured
☐ Injured, no treatment required
☐ Injured, treated
☐ Injured, refused treatment
☐ Hospitalized
☐ Fatal

☐ Handgun
☐ Rifle/Sub-gun
☐ Shotgun
☐ Baton
☐ CEW/ Taser

☐ Chemical Spray
☐ Chemical Canister/Munitions
☐ Impact Munitions
☐ Empty Hand
☐ Other (describe)

**Brief Description of Incident** (Memorandums, Reports of Investigation, Form 3155 Offense/Incident reports or similar may be attached)

Assisted arresting FPS Officers with subject actively resisting.

**FPS Form 10**

**INVOLVED OFFICER FIREARM INFORMATION**                    *(List Additional Firearms Used by Same Officer on Supplement)*

| Manufacturer: | Model Name / Number/ SERIAL NUMBER: | Type *(Pistol, Rifle, etc.)*: | Rounds Fired: | Caliber: | Barrel Length: |
|---|---|---|---|---|---|
| | | | | | |
| Bullet Type: | Bullet Weight: | Firearm Ownership: ☐ FPS-issued ☐ Personal | | Additional Firearms Used: List all information for any additional Firearms ☒ None ☐ See Supplement | |
| | | | | | |

**INVOLVED OFFICER CEW/ TASER INFORMATION**

| Manufacturer: | Model Name / Number/ SERIAL NUMBER: | CARTRIDGE SERIAL NUMBER (S) | Cartride TYPE , | Number of Cartidges Fired | Number of Cycles applied: |
|---|---|---|---|---|---|
| | | | | | |
| | | Firearm Ownership: ☐ FPS-issued ☐ Personal | | Additional CEWS Used: List all information for any additional Firearms ☐ None ☐ See Supplement | |
| **WAS NMI ACHIEVED** ☐ YES ☐ NO ☐ DISPLAY ONLY | **NEED FOR ADDITIONAL APPLICATIONS** ☐ YES ☐ NO | **DID TASEWR RESPOND SATIFACCTORY?** ☐ YES ☐ NO | **IF UNSUCESSFUL, WAS DRIVE STUN USED?,** ☐ YES ☐ NO | **Approximate distance between probes** | **Did Porbes penetrate subjects skin** ☐ YES ☐ NO |
| **Were PROBES REMOVED ON SCENE** ☐ YES ☐ NO **BY WHO?** | | Firearm Ownership: ☐ FPS-issued ☐ Personal | | Additional CEWS Used: List all information for any additional Firearms ☐ None ☐ See Supplement | |

**APPLICATION AREAS:**
**(Place "X's" where probes hit suspect AND *"O's" where stunned*)**



30

**SUSPECT INFORMATION** *(Complete a Separate Form FPS-10 for Each Suspect Involved)*

| Name: | | | AKA(s): | | Sex: ☐ Male  ☐ Female |
|---|---|---|---|---|---|
| Height: | Weight: | Age: | Ethnicity: | FBI Number: | Other Information: |

**SUSPECTS ACTIONS / THREATS (what were they doing, saying.  Under the influence of drugs/ alcholohol, Mental Status, any other inprotant info),  ANY VERABL COMMANDS GIVEN AND SUSPECTS RESPONSE TO SAME ARTICULATE ALL GRAHAM FACTORS and FACTS**

**SUSPECTS DISCRIPTION; (clothing, attire)**
See Additional Comments below.

**Prior Arrests *(Show Date, Offense and Disposition)*:**

**SUSPECT WEAPON OR OTHER USE OF FORCE INFORMATION** *(Check all that apply)*

**Weapons possessed/ used by Suspect at time of arrest**

☐ Handgun
☐ Rifle/Carbine
☐ Submachine Gun
☐ Knife
☐ Other Cutting Instrument
☐ Blunt Instrument

☐ Empty hands
☐ Vehicle
☐ Animal
☐ Chemical Device
☐ Explosive Device

☐ Other (Describe)

Throwing unknown objects i.e., water bottles, rocks, etc.

WHAT Was suspect doing with any above listed weapons – ARTUCULATE ACTIONS

**SUSPECTS INJURIES –**

31

**EXHIBIT A**

☐ Not injured                    ☐ Injured, treated              ☐ Hospitalized
☐ Injured, no treatment required ☐ Injured, refused treatment    ☐ Fatal

**LIST NATURE OF**          **Unknown injuries, if any, to**
**SUSPECTS INJURIES:**      **suspects.**

| Decontamination Required YES ☐ NO ☐ | If decontaminated, describe details (how, when, where, by whom) |
|---|---|
| **MEDICALLY TREATED ON SCENE** YES ☐ NO ☐ | If MEDICALLY TREATED ON SCENE (how, when, where, by whom) |
| **TRANSPORTED TO HOSPITAL** YES ☐ NO ☐ | If Transported (how, when, where, by whom) |

## OFFICERS INJURIES/ MEDICAL

**OFFICERS INJURIES**

☐ **Not injured**               ☐ **Injured, treated**          ☐ **Hospitalized**
☐ **Injured, no treatment**     ☐ **Injured, refused**          ☐ **Fatal**
**required**                    **treatment**

**LIST NATURE OF LEOs**
**INJURIES:**

| Decontamination Required YES ☐ NO ☐ | If decontaminated, describe details (how, when, where, by whom) |
|---|---|
| **MEDICALLY TREATED ON SCENE** YES ☐ NO ☐ | If MEDICALLY TREATED ON SCENE (how, when, where, by whom) |
| **TRANSPORTED TO HOSPITAL** YES ☐ NO ☐ | If Transported (how, when, where, by whom) |

## FINAL OUTCOME OF INCIDENT and ADDITIONAL INFORMATION

**End Result**

☒ Suspect arrested by FPS
☐ Suspect Arrested by other agency
☐ Suspect hospitalized/pending further treatment
☐ Suspect fatality
☐ Animal destroyed
☐ Property damaged (description in comments)
☐ Other (see additional comments below)

Officer's Misc Information
☐ Site walk through ☐ Performed ☐ Offered ☐ Not req'd
☐ 72 Hour post incident admin leave received ☐ Not req'd

**SUSPECT CHARGES – List any an all charges of suspect, (by who,/LE Agencey)**

## EVIDENCE COLLECTED AT SCENE

Any evidence collected at scene and what was down with it?



EXHIBIT A

32

☐ Weapons
☐ spent casing
☐ taser cartridges / probes
☐ anything else ?

List all important information about any collected and
disposition of same – stored in evidence, turned in to, ect

---

On July 17, 2025, at approximately 1000 hours I,9V81 was on duty in full Federal Protective Service (FPS) uniform and clearly identifiable as a federal law enforcement officer per Title 40 United States Code (USC) 1315. I was deployed to Los Angeles, to support Operation Skip Jack at 255 E Temple Street Los Angeles CA

I was inside the PSO Control room (RMC) observing video footage with 9P1067 when we observed through video monitors FPS Inspectors on Alameda Street. P1067 and I immediately proceeded to Alameda Street to assist the fellow FPS Inspectors.

Upon my arrival I observed several FPS Inspectors on Alameda Street, I also observed two FPS Inspectors and one subject on the ground in what appeared to be FPS attempting to detain a subject that was actively resisting and non-complying by not lying on his stomach and not allowing the FPS Inspectors to place handcuffs on him.

I also observed this incident was occurring in the middle of a busy 2 directional 4 lane street that was highly populated with vehicles moving in both directions (North and South).

The temperature of the street was extremely hot, and traffic was halted in the immediate area of the FPS Inspectors.

I observed the subject raise his leg in a manner to possibly kick an Inspector, I then assisted by using my hands holding the subjects' ankles to control the subjects' legs to prevent the subject from kicking FPS inspectors and to also assist with moving the subject on his stomach to allow FPS Inspectors to handcuff him.

I also simultaneously gave verbal commands to the subject of stop resisting and to lay on his stomach.

A drive stun by 7P775 was initiated and the subject complied enabling FPS to handcuff the subject.

9P1067 and I assisted with the escort of the subject to the tunnel area for processing.

EXHIBIT A

33

U.S. Department of Homeland Security
Federal Protective Service **FPS Form 10**

# Officers Use of Force Report

## INCIDENT IDENTIFICATION INFORMATION

| FPS Incident Number: | OIG Incident File Number: | Additional FPS-10's / Same Incident: ☒ Yes ☐ No | Investigating Official: |
|---|---|---|---|

| Program: FPS | REGION 9 | Office / Station: Los Angeles, CA | Supervisor's Name/Title: AC Daniel Dick | Supervisor's Telephone/e-mail: |
|---|---|---|---|---|

| Time of Incident: 6 am -6 pm | Date of Incident: July 17, 2025 | Day of Incident: ☐ S ☐ M ☐ T ☐ W ☒ T ☐ F ☐ S |
|---|---|---|

**Weather and / or Environment conditions:  75 high 61 low** | **Lighting conditions: Sunny in the day Low light at night**

| Number of Suspects: 10-15 | Number of Involved FPS Officers: | Number of Officer Witnesses: | Number of Civilian Witnesses: Unknown |
|---|---|---|---|

**Location/Address of Occurrence** *(Include City, County, State and ZIP Code)*, **or Describe Distance from Permanent Reference Points:**
Los Angeles Federal Building located at 300 N. Los Angeles California 90012

## INVOLVED OFFICER INFORMATION                *(Complete a Separate Form FPS-10 for Each Officer Involved)*

| Name (LAST, First MI): Stubbs, Raymond | Title: Inspector | Telephone: 267-274-6739 | Duty e-mail address: Raymond.g.stubbs |
|---|---|---|---|

| Sex: ☒ Male ☐ Female | Hand Usage: ☒ Right-handed ☐ Left- handed | Height: 6'3" | Weight: 290 | Age: 43 |
|---|---|---|---|---|

| Duty Status: ☒ On Duty ☐ Off Duty | If other agency in joint operation with FPS, list agency: | State: | Local: |
|---|---|---|---|

**Operational Activity** *(Check all that apply)*:
☐ Patrol      ☐ Executing Search Warrant      ☐ Handcuffing      ☐ Other *(Explain)*:
☐ Surveillance   ☐ Executing Criminal Arrest Warrant   ☐ Transporting
☐ Interviewing   ☐ Executing Immigration Arrest Warrant   ☐ Searching Place      Protest/Crowd
☒ Arrest Without Warrant   ☐ Searching Person      Dispersal/Civil Disorder

| Distance from suspect at the time force was employed: ☒ 1 – 14 feet  ☐ 15 – 30 feet  ☐ 31 – 50 feet  ☐ Over 50 feet | Officer Attire ☒ Uniform  ☐ Plain Clothes with markings (raid jacket, body armor or similar)  ☐ Plain Clothes (no visible markings) |
|---|---|

## ON SCENE SUPERVISOR INFORMATION

| Name (LAST, First MI): Dick, Daniel | Title: Area Commander | Telephone: 213-999-1415 | Duty e-mail address: Daniel.dick@fps.d |
|---|---|---|---|

## FORCE USED BY OFFICER

**Level and Type of Force Used by Officer**
☐ Deadly   ☒ Intermediate   ☐ Intermediate Weapon

| Officer Injuries | Device Used by Officer | |
|---|---|---|
| ☐ Not Injured | ☐ Handgun | ☐ Chemical Spray |
| ☐ Injured, no treatment required | ☐ Rifle/Sub-gun | ☐ Chemical Canister/Munitions |
| ☒ Injured, treated | ☐ Shotgun | ☐ Impact Munitions |
| ☐ Injured, refused treatment | ☐ Baton | ☒ Empty Hand |
| ☐ Hospitalized | ☐ CEW/ Taser | ☐ Other (describe) |
| ☐ Fatal | | |

**Brief Description of Incident (Memorandums, Reports of Investigation, Form 3155 Offense/Incident reports or similar may be attached)**



EXHIBIT A

34

On July 17, 2025, while providing security for the Edward R. Roybal Federal Building during an active protest Area Commander DICK, Daniel noticed a demonstrator vandalizing the utility box for the barriers located on federal property. I then dropped the gear that I was moving and started walking towards North Alameda Street. As I was walking across North Alameda Street I witnessed SUBJECT wearing a black shirt with gray camouflage pants both arms extended and grabbing Inspector CLANOR, Chris by his exterior body armor carrier and pushing CLANOR across the street while aggressively yelling in his face. I then grabbed SUBJECT around his midsection, lifting slightly to displace his balance resulting in SUBJECT falling to the ground. Once on the ground SUBJECT continued to resist by kicking both legs and swinging both arms. During that time SUBJECT kicked me on the chest causing me to fall backwards and severely dislocating my left ring finger. Immediately following the injury and ensuring that there was sufficient back up, I withdrew to the garage to receive medical assistance.

**FPS Form 10**
**INVOLVED OFFICER FIREARM INFORMATION**  *(List Additional Firearms Used by Same Officer on Supplement)*

| Manufacturer: | Model Name / Number/ SERIAL NUMBER: | Type *(Pistol, Rifle, etc.)*: | Rounds Fired: | Caliber: | Barrel Length: |
|---|---|---|---|---|---|
| Bullet Type: | Bullet Weight: | Firearm Ownership: | | Additional Firearms Used: List all information for any additional Firearms | |
| | | ☐ FPS-issued ☐ Personal | | ☐ None ☐ See Supplement | |

**INVOLVED OFFICER CEW/ TASER INFORMATION**

EXHIBIT A

35

| Manufacturer: | Model Name / Number/ **SERIAL NUMBER:** | **CARTRIDGE SERIAL NUMBER (S)** | **Cartride TYPE ,** | **Number of Cartidges Fired** | **Number of Cycles applied:** |
|---|---|---|---|---|---|
| | | Firearm Ownership:<br>☐ FPS-issued ☐ Personal | | | Additional CEWS Used: List all information for any additional Firearms<br>☐ None ☐ See Supplement |

| **WAS NMI ACHIEVED**<br>☐ YES ☐ NO<br>☐ DISPLAY ONLY | **NEED FOR ADDITIONAL APPLICATIONS**<br>☐ YES ☐ NO | **DID TASEWR RESPOND SATIFACCTORY?**<br>☐ YES ☐ NO | **IF UNSUCESSFUL, WAS DRIVE STUN USED?,**<br>☐ YES ☐ NO | **Approximate distance between probes** | **Did Porbes penetrate subjects skin**<br>☐ YES ☐ NO |
|---|---|---|---|---|---|
| **Were PROBES REMOVED ON SCENE**<br>☐ YES ☐ NO<br>BY WHO? | | Firearm Ownership:<br>☐ FPS-issued ☐ Personal | | | Additional CEWS Used: List all information for any additional Firearms<br>☐ None ☐ See Supplement |

**APPLICATION AREAS:**
(Place "X's" where probes hit suspect **AND** *"O's" where stunned*)



**SUSPECT INFORMATION**          *(Complete a Separate Form FPS-10 for Each Suspect Involved)*

| Name:<br>Unknown | AKA(s):<br>Unknown | Sex:<br>☒ Male  ☒ Female | | |
|---|---|---|---|---|
| Height:<br>UNK | Weight:<br>UNK | Age:<br>UNK | Ethnicity:<br>UNK | FBI Number: | Other Information: |

**SUSPECTS ACTIONS / THREATS (what were they doing, saying. Under the influence of drugs/ alcholohol, Mental Status, any other inprotant info), ANY VERABL COMMANDS GIVEN AND SUSPECTS RESPONSE TO SAME ARTICULATE ALL GRAHAM FACTORS and FACTS**

**SUSPECTS DISCRIPTION; (clothing, attire)**
Hispanic, male, black hair, black shirt, and gray camouflage pants.

EXHIBIT A

36

**Prior Arrests** *(Show Date, Offense and Disposition)*:

## SUSPECT WEAPON OR OTHER USE OF FORCE INFORMATION                    *(Check all that apply)*

**Weapons possessed/ used by Suspect at time of arrest**

☐ Handgun                 ☒ Empty hands          ☐ Other (Describe)
☐ Rifle/Carbine           ☐ Vehicle
☐ Submachine Gun          ☐ Animal
☐ Knife                   ☐ Chemical Device
☐ Other Cutting Instrument ☐ Explosive Device
☐ Blunt Instrument

WHAT Was suspect doing with any above listed weapons – ARTUCULATE ACTIONS

Suspect grabbing and pushing an Inspector across the street.

**SUSPECTS INJURIES –**

☒ Not injured                 ☐ Injured, treated          ☐ Hospitalized
☐ Injured, no treatment required   ☐ Injured, refused treatment   ☐ Fatal

**LIST NATURE OF SUSPECTS INJURIES:**

| Decontamination Required | If decontaminated, describe details (how, when, where, by whom) |
|---|---|
| YES ☐ NO ☒ | |
| **MEDICALLY TREATED ON SCENE** **YES ☐ NO ☒** | **If MEDICALLY TREATED ON SCENE (how, when, where, by whom)** |
| **TRANSPORTED TO HOSPITAL** **YES ☐ NO ☒** | **If Transported (how, when, where, by whom)** |

## OFFICERS INJURIES/ MEDICAL

**OFFICERS INJURIES**

☐ **Not injured**                 ☒ **Injured, treated**          ☐ **Hospitalized**
☐ **Injured, no treatment required**   ☐ **Injured, refused treatment**   ☐ **Fatal**

**LIST NATURE OF LEOs INJURIES:**

**Severely dislocated left ring finger. Treated on scene and transported to LA General for xrays**

| Decontamination Required | If decontaminated, describe details (how, when, where, by whom) |
|---|---|
| YES ☐ NO ☒ | |
| **MEDICALLY TREATED ON SCENE** **YES ☐ NO ☒** | **If MEDICALLY TREATED ON SCENE (how, when, where, by whom)** |
| **TRANSPORTED TO HOSPITAL** **YES ☐ NO ☒** | **If Transported (how, when, where, by whom)** |

## FINAL OUTCOME OF INCIDENT and ADDITIONAL INFORMATION

| End Result | Officer's Misc Information |
|---|---|
| | |

37


EXHIBIT A

☒ Suspect arrested by FPS
☐ Suspect Arrested by other agency
☐ Suspect hospitalized/pending further treatment
☐ Suspect fatality
☐ Animal destroyed
☐ Property damaged (description in comments)
☐ Other

☐ Site walk through  ☐ Performed ☐ Offered  ☐ Not req'd
☐ 72 Hour post incident admin leave received ☐ Not req'd

**SUSPECT CHARGES – List any an all charges of suspect, (by who,/LE Agencey)**

EVIDENCE COLLECTED AT SCENE

Any evidence collected at scene and what was down with it?

☐ Weapons
☐ spent casing
☐ taser cartridges / probes
☐ anything else ?

List all important information about any collected and
disposition of same – stored in evidence, turned in to, ect

**ADDITIONAL COMMNETS**

EXHIBIT A

38